UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| TL HARVEY,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>JAKE BUTCHER and THOMAS SIMPSON,<br><br>　　　　　　　　　Defendants. | **REPORT AND RECOMMENDATION TO GRANT DEFENDANTS JAKE BUTCHER AND THOMAS SIMPSON'S MOTION FOR SUMMARY JUDGMENT<br>(DOC. NO. 104)**<br><br>Case No. 1:18-cv-00008-JNP-DAO<br><br>Judge Jill N. Parrish<br><br>Magistrate Judge Daphne A. Oberg |

Proceeding pro se, Plaintiff TL Harvey asserted claims against two highway patrol officers and a police commissioner under 42 U.S.C. § 1983 and § 1985, based on two traffic stops, the resulting detention, and a search which he characterizes as unlawful. (Am. Compl. ¶¶ 13–15, 20–44, Doc. No 19.) Named in Mr. Harvey's Amended Complaint are Officers Jake Butcher and Thomas Simpson (collectively, the "Officer Defendants"), and Utah Highway Patrol Commissioner Keith Squires. (*Id.* ¶¶ 13–15.) Mr. Harvey asserted claims against Officers Simpson and Butcher under 42 U.S.C. § 1983 and § 1985; the Fourth, Eighth, and Fourteenth Amendments; and Article I of the Utah Constitution. (*Id.* ¶¶ 59–71.) The Officer Defendants are the sole remaining defendants, as Mr. Harvey's claim against Commissioner Squires for failing to supervise, control, and discipline the Officer Defendants was previously dismissed by the district judge. (*See* Order Adopting R&R and Dismissing Third Cause of Action, Doc. No. 100.)

Now before the court is a motion for summary judgment filed by the Officer Defendants. (Defs.' Mot. for Summ. J. ("Mot."), Doc. No. 104.) Arguing they are entitled to qualified immunity, the Officer Defendants move for summary judgment on all claims against

them under Rule 56 of the Federal Rules of Civil Procedure.  (*See id.* at 1–3).  Where none of the

officers' actions violated Mr. Harvey's constitutional rights, summary judgment should be

granted in their favor.  Accordingly, after reviewing the briefing and the complete record in this

matter,[1] the undersigned[2] RECOMMENDS the district judge GRANT the Officer Defendants'

Motion for Summary Judgment on the grounds that qualified immunity protects them from suit.

## I.     RELEVANT FACTS

First Stop.  On January 11, 2016, at about 2:24 p.m., while driving eastbound on

Interstate 84 in the state of Utah, Mr. Harvey was pulled over by Officer Thomas Simpson of the

Utah Highway Patrol.  (Ex. A to Mot., TL Harvey Dep. ("Harvey Dep.") 35:4–6, 38:8–22, July

11, 2019, Doc. No. 104-2; Ex. B to Mot., Aff. of Thomas Simpson ("Simpson Aff.") ¶¶ 2–3, 10,

Doc. No. 104-3.)  Officer Simpson decided to stop Mr. Harvey's car because, as it passed, he saw

the tint on the front windows appeared to be too dark.  (Simpson Aff. ¶¶ 7, 9–11, Doc. No. 104-

3.)  The tint was so dark, Officer Simpson was unable to see the driver of the car.  (*Id.* ¶ 8.)

Officer Simpson was unaware of Mr. Harvey's race until he approached the car.  (*Id.* ¶ 37.)  After

stopping Mr. Harvey, Officer Simpson expressed his belief that Mr. Harvey's window tint

violated Utah law.  (*Id.* ¶ 14.)  Mr. Harvey explained he lived in Arizona (the car had Arizona

license plates), and Officer Simpson indicated the window tint also likely violated Arizona's

window tint statute.  (*Id.* ¶¶ 4, 15–16.)  Officer Simpson used a tint meter to measure the tint on

---

[1] No oral argument is necessary.  Instead, the court bases its decision on the written memoranda, as provided for in Rule 7-1(f) of the Local Civil Rules.

[2] On June 26, 2018, the district judge referred this case to Magistrate Judge Furse under 28 U.S.C. § 636(b)(1)(B).  (Doc. No. 10.)  On May 15, 2020, this case was reassigned to the undersigned magistrate judge.  (Doc. No. 99.)

Mr. Harvey's windows.  (*Id.* ¶ 18.)  The meter showed Mr. Harvey's windows allowed 27.5% visible light transmittance.  (*Id.*; Harvey Dep. 47:11–14, Doc. No 104-2.)

Officer Simpson asked Mr. Harvey where he lived, where he was headed, and where he had driven from.  (Simpson Aff. ¶¶ 17, 19, Doc. No. 104-3.)  Mr. Harvey responded that he lived in Minnesota but refused to tell Officer Simpson where he was going or where he had driven from.  (*Id.* ¶¶ 17, 21.)  Officer Simpson returned to his car to run checks on Mr. Harvey's driver's license and vehicle.  (*Id.* ¶ 22.)  After seeing the vehicle registration showed an address in Illinois, even though the car had license plates from Arizona and Mr. Harvey lived in Minnesota, Officer Simpson returned to Mr. Harvey's car to ask about the discrepancy.  (*Id.* ¶ 23.)  The officer then continued his record checks, after which he returned Mr. Harvey's license and registration, issued a warning to Mr. Harvey, and allowed him to leave.  (*Id.* ¶¶ 25–26.)  The stop lasted seventeen or eighteen minutes.[3]  (*Id.* ¶ 27 (seventeen minutes); Harvey Dep. 61:18–22, Doc. No. 104-2 (eighteen minutes).)

<u>Communication Between Officers.</u>  Mr. Harvey drove off, continuing eastbound, merging from I-84 to I-80.  (Harvey Dep. 62:17–19, 63:2–4, 65:13–25, Doc. No. 104-2; Simpson Aff. ¶ 28, Doc. No. 104-3.)  After Mr. Harvey left the scene of the first stop, Officer Simpson sent a digital message through an internal system to Officer Butcher, another Utah Highway Patrol

---

[3] In his affidavit, Mr. Harvey asserts the stop lasted for nearly thirty minutes, (Aff. of TL Harvey ("Harvey Aff.") ¶ 9(a), Doc. No. 109-3, at 3), but this claim is belied by the statements of Officer Simpson and Mr. Harvey himself, as well as the video of the stop.  (Simpson Aff. ¶ 27, Doc No. 104-3; Harvey Dep. 61:18–22, Doc. No. 104-2; *see also* Ex. L to Mot., Thomas Simpson Dash Cam Video (on file with the court).)

trooper.  (Simpson Aff. ¶ 29, Doc. No. 104-3.)  The officers' conversion through messaging was as follows:[4]

> OFFICER 1: got a car for you to go stop
>
> OFFICER 2: ***Joined The Chat***
>
> OFFICER 1: I just let him go hes probalby at about milepost 100-101 on I-84 east
>
> OFFICER 2: ***what you got?***
>
> OFFICER 1: red. Volks with az plates
>
> OFFICER 1: its a lease car so its to the guy but hes from minnisota
>
> OFFICER 1: keeps doging my questions of wheres hes coming from.
>
> OFFICER 2: ***ok ill hurry and head that way***
>
> OFFICER 1: window tint measured 27%
>
> OFFICER 1: so easy stop but if you can run your dog you might get something
>
> OFFICER 2: ***ok thanks. Ill watch for it***
>
> OFFICER 2: AZ limit is 33% and MN limit is 50%
>
> OFFICER 1: either way hes under
>
> OFFICER 2: ***ok sounds good***
>
> OFFICER 1: FYI hes been stopped prior in Utah for window tint accordign to
>
> RMS
>
> OFFICER 1: cant even see the driver through  he window tint

(Ex. E to Mot., Messages Between Officer 1 and Officer 2 (Jan. 11, 2016) ("Messages"), Doc. No. 104-6.)

---

[4] Officer 1 is Officer Simpson.  Officer 2 is Officer Butcher.  The full message conversation is included, with its original syntax, spelling, and grammar.

Officers Simpson and Butcher had no other communications about Mr. Harvey, and Officer Simpson did not tell Officer Butcher he had checked Mr. Harvey's license or registration. (Simpson Aff. ¶¶ 32–33, Doc. No. 104-3.)  He also did not give Officer Butcher any information about Mr. Harvey's age, race, or appearance.  (*Id.* ¶ 35.)  Because Officers Simpson and Butcher were operating in different counties, they were on different dispatch channels, so Officer Butcher did not hear Officer Simpson's radio traffic.  (Ex. F to Mot., Aff. of Jake Butcher ¶ 9 ("Butcher Aff."), Doc. No. 104-7.)  Utah Highway Patrol Troopers can run different types of checks on individuals, and the checks can yield different results depending on whether they are run by the troopers themselves, or by a dispatcher.  (*Id.* ¶ 52; Simpson Aff. ¶ 45, Doc. No. 104-3.)  Officer Simpson was not in a supervisory role over Officer Butcher.  (Simpson Aff. ¶ 43, Doc. No. 104-3.)

Second Stop.  Around 3:07 p.m., Officer Butcher stopped Mr. Harvey.  (Butcher Aff. ¶ 16, Doc. No. 104-7.)  Officer Butcher was unaware of Mr. Harvey's race until he approached the car; [5] Mr. Harvey's race did not motivate any of Officer Butcher's actions.  (*Id.* ¶¶ 42–45.)  Officer Butcher maintains he advised Mr. Harvey he stopped him because his window tint violated Utah's statute, (*id.* ¶ 19), but Mr. Harvey disputes this, (Harvey Dep. 67:11–18, Doc.

---

[5] Mr. Harvey asserts that whether his race could be seen through his window tint remains a disputed question of fact.  (Harvey Aff. ¶ 7, Doc. No. 109-3, at 3.)  However, this misapprehends the relevant issue.  The relevant issue is not whether Mr. Harvey's race could be discerned as a general matter, but whether Officers Simpson and Butcher stopped Mr. Harvey because of his race.  It is undisputed neither officer could see his race at the time they decided to stop him.  (*See* Simpson Aff. ¶ 37, Doc. No. 104-3; Butcher Aff. ¶ 43, Doc. No. 104-7.)  Further, Mr. Harvey suggests the officers' reference to "Arizona plates" in their communication, use of document redactions, and requests to seal, are evidence that "Arizona plates" is code for Mr. Harvey's race.  (Opp'n 37–38, Doc. No. 109-2.)  However, such "[v]ague, conclusory statements do not suffice to create a genuine issue of material fact" preventing summary judgment.  *Ford v. West*, 222 F.3d 767, 777 (10th Cir. 2000) (internal quotation marks omitted).

No. 104-2).[6]  Mr. Harvey did tell Officer Butcher he had just been stopped for a window tint

violation.  (*Id.* at 67:5–7.)  Officer Butcher asked for Mr. Harvey's license and car registration,

then returned to his patrol car to run checks on Mr. Harvey and his vehicle.  (Butcher Aff. ¶¶ 21–

22, Doc. No. 104-7.)  While the checks were running, Officer Butcher walked his certified

narcotics-detection dog around Mr. Harvey's car.  (*Id.* ¶¶ 23, 25.)  At the back of Mr. Harvey's

car, the dog alerted to the presence of narcotics.  (*Id.* ¶ 24.)  However, Mr. Harvey saw no

behavior by the dog which, in his opinion, indicated an alert.  (Pl.'s Mot./Resp. in Opp'n to Defs.

Mot. for Summ J. ("Opp'n") 23, Doc. No. 109-2.)

       After the dog's alert, Officer Butcher asked Mr. Harvey to step out of his car so Officer

Butcher could search it.  (Butcher Aff. ¶ 29, Doc. No. 104-7.)  Mr. Harvey did so but asked for a

supervisor to be present before Officer Butcher searched the car.  (*Id.* ¶ 30.)  A supervisor started

toward the stop at 3:18 p.m. and arrived at 3:40 p.m.  (*Id.* ¶¶ 32, 36; Defs.' Statement of

Undisputed Facts ("DSUF") ¶ 62; Doc. No. 104.)  In the interim, Officer Butcher offered to

allow Mr. Harvey to wait in the back of his patrol car—an invitation Mr. Harvey declined.  (*Id.*

¶¶ 33–34; Harvey Dep. 78:15–79:1, Doc. No. 104-2.)  Instead, Mr. Harvey waited outside in the

"frigid cold."  (Opp'n 4, Doc. No. 109-2.)  After the supervisor arrived, he also offered to allow

---

[6] This is not a genuine dispute as to a material fact which would prevent summary judgment.  An officer's failure to inform a person as to the reason for the stop does not make the stop unconstitutional.  *See United States v. Magallon-Lopez*, 817 F.3d 671, 675 (9th Cir. 2016) (noting the court's focus is on the "objectively reasonable basis for the stop," and whether an officer lies to the plaintiff regarding the reason for the stop has no effect on the constitutionality of the stop, so long as the actual facts justifying the stop were known to the officer at the time of the stop); *United States v. Thompson*, No. CR 20-24-M-DWM, 2020 U.S. Dist. LEXIS 154156, at *9 n.2 (D. Mont. Aug. 25, 2020) (unpublished) (noting even if an officer violated state law by failing to inform passengers of the reason for a stop, this would not justify suppression, which is generally available only when conduct violates federal constitutional protections).  Mr. Harvey offers no legal support to the contrary.  Accordingly, even if Officer Butcher did not inform Mr. Harvey of the reason for the stop, that does not create a genuine dispute as to a material fact.

Mr. Harvey to sit in his car, but Mr. Harvey again declined.  (Harvey Dep. 79:25–80:10.)  Officer Butcher spent no more than thirty-one minutes searching Mr. Harvey's vehicle, finding no drugs.[7]  (*See* Ex. M to Mot., Bryce Rowser Dash Cam Video ("Rowser Video"), at 15:40:45–16:11:30 (on file with the court) (showing supervising officer arriving around 3:40 p.m. and the stop ending around 4:11 p.m.); Harvey Dep. 83:19–84:1, 93:15–18, Doc. No. 104-2 (agreeing Officer Butcher searched vehicle after the supervisor arrived, and stop ended by 4:11 p.m.); Butcher Aff. ¶¶ 37–38, Doc. No. 104-7.)

Officer Butcher used his supervisor's tint meter to measure the tint on Mr. Harvey's window, as his own meter's battery had died.  (*Id.* ¶ 39.)  The meter showed the window allowed 27.5% visible light transmittance.  (*Id.*)  Officer Butcher issued a warning to Mr. Harvey for the window tint violation and returned his license and registration.  (*Id.* ¶ 40.)  The entire second stop lasted about sixty-five minutes.  (*Id.* ¶ 41.)

Mr. Harvey makes several claims of disputed fact which are unsupported by the record. Among other things, he claims it took an hour for Officer Butcher's supervisor to arrive at the scene.  (Aff. of TL Harvey ("Harvey Aff.") ¶ 9(v), Doc. No. 109-3, at 5.)  However, the record evidence, including the video of the stop, shows the supervisor arrived thirty-three minutes after Officer Butcher stopped Mr. Harvey—and twenty-two minutes after Officer Butcher asked for a supervisor to respond, per Mr. Harvey's request.  (Rowser Video 15:21, 15:40:45; *see also* Butcher Aff. ¶¶ 30, 32, 36, Doc. No. 104-7.)  Mr. Harvey also claims the second stop of his car

---

[7] The government argues the search of the car lasted seventeen minutes, (Mot. 11, Doc. No. 104), citing to the video from the supervising officer's dash camera, (Defs.' Reply in Support of Mot. for Summ. J. ("Reply") 9, Doc. No. 115).  While the video appears to support this claim, the footage is obscured by Officer Butcher's patrol car.  What is indisputable is that the search cannot have lasted any longer than thirty-one minutes because it did not start until after the supervisor arrived at 3:40 p.m., (Rowser Video 15:40:45; Harvey Dep. 93:15–18), and the stop ended by 4:11 p.m., (Harvey Dep. 83:19–84:1).

lasted longer than two hours.  (Harvey Aff. ¶ 9(y), Doc. No. 109-3, at 5.)  However, the

undisputed record, including Mr. Harvey's own sworn testimony, shows the stop began at 3:06 or

3:07 and ended no later than 4:11. (Butcher Aff. ¶¶ 16, 41; DSUF ¶ 46, Doc. No. 104; Harvey

Dep. 83:19–84:1, Doc. No. 104-2.)  Accordingly, these claims by Mr. Harvey carry no weight.[8]

*See Ellis v. J.R's Country Stores, Inc.*, 779 F.3d 1184, 1201 (10th Cir. 2015) (finding "[a]ffidavits

must contain indicia of reliability" and "[u]nsubstantiated allegations carry no probative weight

in summary judgment proceedings"); *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir.

2008) ("[W]hen opposing parties tell two different stories, one of which is blatantly contradicted

by the record, so that no reasonable jury could believe it, a court should not adopt that version of

the facts.").

## II.     LEGAL STANDARDS

Because Mr. Harvey proceeds pro se, the court construes his filings liberally and holds

them "to a less stringent standard than formal pleadings drafted by lawyers."  *Smith v. United*

---

[8] Mr. Harvey argues he is entitled to an adverse inference regarding Officer Butcher's failure to preserve his dash cam and body cam video. (*See* Opp'n 3, 23, 28, 33, 35, Doc. No. 109-2.)  To obtain an adverse inference as a spoliation sanction, the movant must establish "(1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, [] (2) the adverse party was prejudiced by the destruction of the evidence," and (3) "bad faith." *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009) (internal quotation marks omitted).  Although Mr. Harvey states Officer Butcher willfully destroyed the videos "to disrupt plaintiff's case" because the videos "would show that Butcher was not truthful," (Opp'n 3, 35, Doc. No. 109-2), there is no evidence to suggest Officer Butcher had a duty to preserve the dash cam or that any destruction was in bad faith.  Officer Butcher stated he deleted his dash cam video after 60-days, pursuant to the department's retention policy and before learning of Mr. Harvey's suit.  (Ex. P to Reply, Resp. to Interrogs. 5, Doc. No. 115-4.)  Mr. Harvey's attorney sent the Utah Highway Patrol a letter dated January 5, 2017, almost a year after the stop and well past the 60-day retention period, putting them on notice of a potential lawsuit.  (*See* Ex. GGG to Harvey Aff., Doc. No. 109-3, at 125.)  Additionally, it is not apparent a body cam video ever existed.  Accordingly, Mr. Harvey has not offered evidence sufficient to meet these standards and establish an adverse inference sanction is warranted.

*States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (quoting *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005)). Nonetheless, he must "follow the same rules of procedure that govern other litigants." *Garrett*, 425 F.3d at 840 (quoting *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)). While a court must make some allowances for "the [pro se] plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements," a court cannot act as the litigant's advocate, supply additional factual allegations, or develop a legal theory for him. *Smith*, 561 F.3d at 1096 (internal quotation marks omitted).

### A. Motion for Summary Judgment

Courts only grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013) (internal quotation marks omitted). In evaluating motions for summary judgment, the court views "the evidence and make[s] all reasonable inferences in the light most favorable to the nonmoving party." *N. Nat. Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008). But, "where the non moving party will bear the burden of proof at trial on a dispositive issue that party must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998) (internal quotation marks omitted).

### B.  Qualified Immunity

The Officer Defendants claim they have qualified immunity for their actions, entitling them to a grant of summary judgment.  Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted).  It provides broad protection, shielding "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  Qualified immunity operates as immunity from suit, rather than as a simple defense to liability.  *Pearson*, 555 U.S. at 237.  When a defendant asserts qualified immunity, the burden shifts to the plaintiff to show: "(1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 460 (10th Cir. 2013).  If the plaintiff's claim fails on either prong, qualified immunity protects the defendant from suit.  *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002).

If a plaintiff successfully demonstrates violation of a clearly established constitutional right, the burden shifts to the defendant to prove no disputed material facts remain which would defeat the qualified immunity defense.  *Id.*  If a fact relevant to the immunity analysis remains unresolved, the court should not grant summary judgment based on the qualified immunity defense.  *Id.*

### III.  ANALYSIS

Mr. Harvey raised claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1985, related to the two traffic stops of his car, the resulting detentions, and a search of his car.  He alleges Officers

Simpson and Butcher violated his Fourth Amendment right to be free from unreasonable searches and seizures, his Fourteenth Amendment right to equal protection, his Eighth Amendment right to be free from cruel and unusual punishment, and his equivalent rights under the Utah State Constitution.  As described below, Mr. Harvey has failed to establish a violation of these constitutional rights.  Because of this, the Officer Defendants are entitled to summary judgment on these claims.

Section 1983 permits a plaintiff to sue state officials who violate her constitutional or federally protected rights.  *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013).  "A § 1983 claim requires a plaintiff to show both the existence of a federally-protected right and the deprivation of that right by a person acting under color of state law."  *Wittner v. Banner Health*, 720 F.3d 770, 773 (10th Cir. 2013).  Although the elements required to establish a § 1983 claim differ depending on which rights are at issue, to assert a viable claim under § 1983, a plaintiff must "identify *specific* actions taken by *particular* defendants" in violation of her rights.  *Pahls*, 718 F.3d at 1226 (alterations in original) (quoting *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532 (10th Cir. 1998)).

For a § 1985 claim, a plaintiff must allege a conspiracy aimed at either preventing an officer from performing her duties; intimidating a party, witness, or juror involved in a case; obstructing justice to deny a person equal protection of the laws; or depriving a person of her rights and privileges to deny her equal protection of the laws.  42 U.S.C. § 1985.  Of the possible § 1985 violations Mr. Harvey could allege, only the last could possibly apply.  "[A] § 1985(3) claim generally describes a conspiracy of two or more persons for the purpose of depriving [] another of equal protection of the laws or equal privileges and immunities under the laws."  *Dixon v. City of Lawton*, 898 F.2d 1443, 1447 (10th Cir. 1990).  "In order to support a section

1985(3) claim, the plaintiff must be a member of a statutorily protected class, and the actions taken by defendant must stem from plaintiff's membership in the class." *Silkwood v. Kerr-McGee Corp.*, 637 F.2d 743, 746 (10th Cir. 1980). Specifically, § 1985(3) only applies to conspiracies "motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 101–02 (1971)).

### A.  Fourth Amendment Claims: Unreasonable Seizure, Detention, and Search

In his § 1983 claims, Mr. Harvey argues both the first and second stops of his vehicle, the detentions associated with the stops, and the ultimate search of his vehicle constitute a violation of his Fourth Amendment rights. *See* U.S. Const. amend. IV. In determining whether either Officer Simpson or Officer Butcher violated Mr. Harvey's constitutional right to be free from unreasonable searches and seizures, the court must analyze whether the officers' actions were "objectively reasonable." *See Donahue v. Wihongi*, 948 F.3d 1977, 1187 (10th Cir. 2020); *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1313 (10th Cir. 2009). The court evaluates reasonableness under the totality of the circumstances. *Thomson*, 584 F.3d at 1313. Objective reasonableness depends on the facts and circumstances facing the officer, *id.*, and it does not require officers to take the least restrictive course of action, *Thomas v. Durastanti*, 607 F.3d 655, 665 (10th Cir. 2010).

A routine traffic stop is akin to an investigative detention and is governed by the principles outlined in *Terry v. Ohio*, 392 U.S. 1 (1968). *United States v. McGehee*, 672 F.3d 860, 866 (10th Cir. 2012). A stop is justified at its inception if it is "based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." *Id.* at 867 (internal quotation marks omitted); *see also*

*United States v. Whitley*, 680 F.3d 1227, 1232–33 (10th Cir. 2012).  The court's "sole inquiry is whether this particular officer had reasonable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction." *United States v. Villa-Chaparro*, 115 F.3d 797, 801 (10th Cir. 1997) (quoting *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995) (*en banc*)).  "It is irrelevant that the officer may have had other subjective motives for stopping the vehicle." *United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998); *see also United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir. 2009) (noting "an officer's actual motivations or subjective beliefs and intentions are, quite simply, irrelevant").  "[A]n officer's motive" will not "invalidate[] objectively justifiable behavior under the Fourth Amendment." *Wren v. United States*, 517 U.S. 806, 812 (1996).  In other words, to prevail on his claim related to the traffic stops, Mr. Harvey must establish Officer Simpson and Officer Butcher, respectively, lacked reasonable suspicion he violated traffic or equipment laws.

Turning to the length of the stop, "[g]enerally, an investigative detention must 'last no longer than is necessary to effectuate the purpose of the stop." *United States v. Cervine*, 347 F.3d 865, 870–71 (10th Cir. 2003) (quoting *United States v. Patten*, 183 F.3d 1190, 1193 (10th Cir. 1999)).  An officer's purpose or mission during a traffic stop involves determining whether to issue a traffic ticket, checking the driver license, checking for arrest warrants, and inspecting the vehicle's registration and proof of insurance. *Rodriguez v. United States*, 575 U.S. 348, 355 (2015).  Although an officer may conduct unrelated checks during an otherwise lawful traffic stop, "he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Id.*

Construing the facts in favor of Mr. Harvey as the nonmoving party, neither traffic stop, nor the resulting detentions or search of his car, violated Mr. Harvey's constitutional rights. Mr. Harvey has failed to present facts sufficient to prevent a summary judgment ruling against him with regard to his Fourth Amendment claims.[9] Where the undisputed facts establish the Officer Defendants acted constitutionally in their interactions with Mr. Harvey, they are entitled to qualified immunity.

### 1.   First Stop and Detention (Officer Simpson)

As an initial matter, Mr. Harvey contends the first traffic stop was invalid because it was a pretext stop based on his race. (Am. Compl. ¶¶ 18, 31, 46, 63, Doc. No. 19; Opp'n at 6–7, Doc. No. 109-2.) And he argues the resulting detention was unlawful because Officer Simpson asked him questions which diverged from the purpose of the stop. (Am. Compl. ¶ 47; *see also* Opp'n at 19–20, Doc. No. 109-2).

The undisputed facts show the first stop of Mr. Harvey was adequately supported by reasonable, articulable suspicion of an equipment violation. As Officer Simpson explained, he stopped Mr. Harvey because he suspected his window tint was too dark. (Simpson Aff. ¶¶ 7, 9–11, Doc. No. 104-3; *see also* Harvey Dep. 57:3–58:5, Doc. No. 104-2.) During the stop, Officer Simpson expressed his belief that the window tint violated both Utah and Arizona law. (Simpson Aff. ¶¶ 14–16, Doc. No. 104-3.) Upon testing it, Officer Simpson found he was correct. The tint registered at 27.5% visible light transmittance. (*Id.* ¶ 18.) Mr. Harvey has offered no evidence to

---

[9] Mr. Harvey appended to his affidavit some disciplinary records of Officers Simpson and Butcher. (*See* Ex. FFF to Harvey Aff., Doc. No. 109-3, at 106–123.) He claims they provide proof of prior constitutional and policy violations. (Opp'n 25, Doc. No. 109-2.) These documents are irrelevant to the summary judgment determination as they say nothing about the officers' actions in this case.

dispute this.  Utah law requires at least 43% visible light transmittance, Utah Code Ann. § 41-6a-1635(1)(b), and Arizona requires at least 30%, Ariz. Rev. Stat. Ann. § 28-959.01(A)(1).  In other words, Officer Simpson's suspicion about Mr. Harvey's equipment violation in both states proved correct.  The court does not inquire into any subjective motivations of Officer Simpson, and it is undisputed that Officer Simpson was unaware of Mr. Harvey's race until he approached the car.[10]  (Simpson Aff. ¶ 37, Doc. No. 104-3.)  Officer Simpson's explanation for the stop demonstrates he had reasonable suspicion Mr. Harvey violated an equipment regulation, which is the court's sole inquiry.  *See Villa-Chaparro*, 115 F.3d at 801.

The detention resulting from the first stop of Mr. Harvey was also constitutional, as it lasted only so long as necessary for Officer Simpson to effectuate the purposes of the stop.  Mr. Harvey complains Officer Simpson asked questions diverging from the purpose of the stop.  But questioning on matters unrelated to the mission of the traffic stop is only improper if it "measurably extend[s] the duration of the stop." *Rodriguez*, 575 U.S. at 355; *see also United States v. Valenzuela*, 494 F.3d 886, 890 (10th Cir. 2007) ("[O]fficers may ask questions outside the scope of the traffic stop so long as the questions do not appreciably prolong the length of the stop.").  In other words, Officer Simpson was permitted to ask unrelated questions of Mr. Harvey which did not extend the stop past the time necessary to complete its purposes.  As the record shows, Officer Simpson kept his questions sufficiently narrow.  He asked questions relevant to the stop: where the car was registered, where Mr. Harvey lived, where Mr. Harvey had driven

---

[10] Mr. Harvey supplied evidence that his neighbor, Kevin Richter, can distinguish Mr. Harvey's race through the windows of Mr. Harvey's car.  (Aff. of Kevin Richter ¶¶ 3–4, Doc. No. 110.) But what Mr. Richter sees based on his exposure to and familiarity with Mr. Harvey says nothing about what Officer Simpson saw as Mr. Harvey passed him at freeway speeds.  And even if the officers had seen Mr. Harvey's race before stopping him, that fact would be immaterial in the absence of evidence that Mr. Harvey's race motivated the stop.

from, and where he was headed.  Officers are permitted to inquire about a driver's travel plans in the context of an ordinary traffic stop "because [t]ravel plans typically are related to the purpose of a traffic stop." *United States v. Cortez*, 965 F.3d 827, 839 (10th Cir. 2020) (alteration in original) (internal quotation marks omitted).  In other words, these questions did not improperly or measurably extend the time needed to complete the mission of the stop.

Because Mr. Harvey failed to put forth evidence supporting his claim that Officer Simpson's conduct during the traffic stop and resulting detention violated his Fourth Amendment rights, the court need conduct no further inquiry.  *See Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007).  Officer Simpson is entitled to qualified immunity on the § 1983 claims related to his actions under the Fourth Amendment.  The undersigned RECOMMENDS the district judge GRANT the Officer Defendants' Motion for Summary Judgment on these claims as it pertains to Officer Simpson.

### 2.  Second Stop, Detention, and Search (Officer Butcher)

Mr. Harvey contends the second traffic stop was invalid because Officer Simpson, who Mr. Harvey alleges was motivated by his race, instructed Officer Butcher to stop Mr. Harvey. (Opp'n 7, 21, Doc. No. 109-2.)  He argues Officer Butcher lacked legal authority to stop him because his window tint level complied with Arizona law and his vehicle was registered in Arizona.  (Am. Compl. ¶ 41; Opp'n at 13, 16, 40, Doc. No. 109-2.)  Mr. Harvey also maintains Officer Butcher stopped him with the purpose of running his narcotics dog around the car, a purpose he implies is improper.  (Opp'n at 22, Doc. No. 109-2.)   In addition, Mr. Harvey argues the narcotics-dog sniff of his vehicle was unjustified, as was the search of his car—arguments which implicate the length of Mr. Harvey's detention during the second traffic stop.  (*Id.* at 22–23.)

It is undisputed that Officer Butcher stopped Mr. Harvey shortly after Officer Simpson ended his traffic stop and let Mr. Harvey go.  Immediately after Officer Simpson released Mr. Harvey, he communicated with Officer Butcher about stopping Mr. Harvey again.  Officer Butcher, seeing the dark tint on Mr. Harvey's windows as his vehicle passed, decided to do so. Officer Butcher reasonably suspected an equipment violation upon seeing this tint.  Mr. Harvey has failed to offer facts showing the second traffic stop was not justified at its inception by this suspicion, which was based on Officer Butcher's personal observation.  *See Villa-Chaparro*, 115 F.3d at 801.

Mr. Harvey contends Officer Simpson's communication with Officer Butcher changes the analysis.  He argues Officer Simpson instructed or commanded Officer Butcher to stop him, and that this instruction was improperly motivated both by Mr. Harvey's race and by the officers' desire to run a narcotics dog around his car.  (Opp'n 4, 16, 23, 40, Doc. No. 109-2.)  In the first instance, the record does not support Mr. Harvey's claim that Officer Simpson instructed or ordered Officer Butcher to stop Mr. Harvey.[11]  Officer Simpson did not supervise Officer Butcher.  (Simpson Aff. ¶ 43, Doc. No. 104-3.)  And the messages Officer Simpson sent to Officer Butcher cannot fairly be read as a command or an instruction.  Officer Simpson's message states only, "got a car for you to go stop," and suggests Officer Butcher "might get

---

[11] Any claim that Officer Simpson bears liability for the second traffic stop fails because liability under § 1983 requires personal involvement.  *Pahls*, 718 F.3d at 1231–32.  To prevail on such a claim, Mr. Harvey would need to show Officer Simpson's own conduct regarding the second stop constituted a constitutional violation, either through direct involvement or supervisory liability.  *Id.*; *see also A.M. v. Holmes*, 830 F.3d 1123, 1164 (10th Cir. 2016).  This, he has not done.  Officer Simpson is neither a supervisor of Officer Butcher's nor did he participate in the stop.  Providing Officer Butcher with information and suggesting he may want to stop Mr. Harvey does not causally link Officer Simpson to Officer Butcher's independent decision to conduct another traffic stop.

something" if he runs his dog around the car.  (Messages, Doc. No 104-6.)  Moreover, even if

Officer Simpson had been a supervisor of Officer Butcher who commanded Officer Butcher to

make the stop, it would not change the inquiry so long as Officer Butcher had objectively

reasonable suspicion of a traffic or equipment violation—which he did.

The fact that Officer Butcher knew Officer Simpson had also just stopped Mr. Harvey

does not undermine the justification for Officer Butcher's stop—where Officer Butcher

personally observed an equipment violation.[12]  In *Nelson v. Kline*, the District of Maine grappled

with a similar scenario, finding the second traffic stop objectively reasonable.  No. 99-237-B-H,

2000 U.S. Dist. LEXIS 8055, at *15 (D. Me. May 16, 2000) (unpublished).  Initially, an officer

stopped a truck on suspicion of reckless driving.  *Id.* at *4.  During the stop, the officer noticed

an odor of alcohol.  Because he lacked enough information to determine if the driver was

impaired, the officer advised him to go home.  *Id.*  After leaving the scene, the first officer called

a second officer, told him where the truck was headed, and suggested the second officer may

want to stop the truck because of its loud exhaust and because the driver may be impaired.  *Id.* at

*5.  The second officer stopped the truck three minutes later, knowing it was the same vehicle the

first officer had stopped.  *Id.* at *5, *11.  After a state court judge found the second stop

constitutionally invalid and granted the driver's motion to suppress, the driver/plaintiff filed a

---

[12] The Tenth Circuit addressed a dual stop situation in *United States v. Peters*, 10 F.3d 1517 (10th
Cir. 1993), but the facts are distinguishable.  In *Peters*, pursuant to a traffic stop, an officer
investigated whether the vehicle's occupants were acting extremely nervously because they were
transporting illegal drugs.  *Id.* at 1519.  A consent search of the vehicle revealed no evidence of
illegal activity.  *Id.*  After the stop, the officer referred the matter to a federal agent.  *Id.* at 1520.
The agent stopped the same vehicle based only on the occupants' nervousness.  *Id.*  The Tenth
Circuit concluded the second stop was unjustified because it was based purely on the same
suspicions of nervousness the second agent "knew had proved illusory at the earlier stop."  *Id.* at
1522–23.  In *Peters*, unlike this case, the second agent observed no traffic or equipment
violations, so he had no objectively reasonable suspicion for the stop.

§ 1983 claim in federal court. *Id.* at *7–8, *10–11. Reviewing the same stop, the District of Maine found that where it was undisputed that the second officer had an articulable suspicion of a traffic violation at the time of the stop, his conduct did not violate the Fourth Amendment. *Id.* at *15–16. As discussed above, Officer Butcher also observed a traffic/equipment violation. As in *Kline*, this is enough to justify the second stop of Mr. Harvey regardless of any communication between Officer Simpson and Officer Butcher.

Next, it is undisputed that Officer Butcher was unaware of Mr. Harvey's race until he approached the car. (Butcher Aff. ¶¶ 42–45, Doc. No. 104-7.) And even if it is true that the stop was motivated by Officer Butcher's desire to walk a narcotics dog around the car, an officer's actual motives for conducting a stop are immaterial if the stop is otherwise justified by objectively reasonable suspicion of a violation. *United States v. Polly*, 630 F.3d 991, 997 (10th Cir. 2011); *Winder*, 557 F.3d at 1134. For instance, in *United States v. Polly*, the Tenth Circuit found a defendant's rights under the Fourth Amendment were not violated where the officer stopped the vehicle based on an observed a traffic violation, even if the stop was otherwise "simply a ruse" to further a drug-trafficking investigation. 630 F.3d at 997. In other words, Officer Simpson's communication with Officer Butcher does not change or undermine the fact that Officer Butcher's stop of Mr. Harvey was objectively justified.

Moving to the search of Mr. Harvey's vehicle, Mr. Harvey has not presented facts showing either the dog sniff or the resulting search were unconstitutional. During the stop, Officer Butcher asked Mr. Harvey for his license and registration and ran checks on him and his vehicle. Without question, officers are permitted to complete these tasks attendant to a lawful traffic stop. *See United States v. Mayville*, 955 F.3d 825, 830 (10th Cir. 2020) (finding criminal history check justifiable during a traffic stop as a "negligibly burdensome precaution"); *United*

*States v. Soto*, 988 F.2d 1548, 1554 (10th Cir. 1993) ("During a routine traffic stop, the detaining officer may request a driver's license and vehicle registration, run a computer check on the car and driver, and issue a citation.").  Significantly, Officer Butcher ran his dog around Mr. Harvey's car while these checks were being completed.  (DSUF ¶ 53, Doc. No. 104; Harvey Dep. 67:19–68:7, Doc. No. 104-2.)  This is important because no reasonable suspicion of wrongdoing is required when a dog sniff is conducted during a lawful traffic stop, so long as the stop is not extended in any way by the sniff.  *See Rodriguez*, 575 U.S. at 353–55.  Such is the case here.  Because the dog sniff conducted by Officer Butcher did not prolong the stop, it does not implicate the Fourth Amendment.

Officer Butcher attests that his narcotics dog alerted to the scent of narcotics during the sniff of Mr. Harvey's car, giving him a basis to search the car.  (Butcher Aff. ¶ 24, Doc. No. 104-7.)  The Tenth Circuit has made it clear that an alert by a narcotics-detection dog provides probable cause justifying an officer's search of a vehicle for drugs.  *See United States v. Kitchell*, 653 F.3d 1206, 1223 (10th Cir. 2011); *United States v. Villa*, 589 F.3d 1334, 1341 (10th Cir. 2009).  The fact that Officer Butcher's search did not yield illegal drugs does not undermine the original probable cause.  Moreover, although Mr. Harvey did not see any behavior by the dog indicating an alert, (Am. Compl. ¶ 29, Doc. No. 19), this fact is not sufficient to create a material dispute.  It only matters what Officer Butcher saw—as the certified narcotics detection dog handler.  (*See* Butcher Aff. ¶¶ 25–26, Doc. No. 104-7.)  Mr. Harvey does not present evidence sufficient to create a materially disputed fact as to the length or manner of Officer Butcher's search; both were reasonable.[13]

---

[13] To the extent Mr. Harvey contends Officer Simpson bears responsibility for the actions of Officer Butcher regarding search of his car, his claim fails.  As noted in footnote eleven, liability under § 1983 is an individualized determination requiring participation by the defendant at issue.

Finally, the length of Mr. Harvey's detention does not violate the Fourth Amendment. From the time of the stop to the time of the dog's alert, Officer Butcher was engaged in completing the mission of the stop: checking records related to Mr. Harvey and his vehicle. As soon as the dog alerted, Officer Butcher had probable cause to search the vehicle. The search lasted no more than thirty-one minutes—a reasonable length of time. *See, e.g.*, *United States v. Guerrero-Sanchez*, 412 F. App'x 133, 141–42 (10th Cir. 2011) (unpublished) (noting there is "no bright-line rule" as to the reasonable duration of a traffic stop, and finding three-hour combined stop and search to be reasonable); *Cervine*, 347 F.3d at 872–73 (upholding stop leading to canine investigation lasting approximately fifty minutes). Much of the stop's duration can be traced to Mr. Harvey's request to have a police supervisor present at the time of the vehicle search. It took the supervisor about twenty-two minutes to arrive. After the supervisor arrived and Officer Butcher's search yielded nothing of concern, the officer verified the window tint level on Mr. Harvey's vehicle, completed the citation process, and allowed Mr. Harvey to leave.

The fact that Officer Butcher conducted a second stop of Mr. Harvey after communicating with Officer Simpson raises a final question of whether the second stop was unconstitutionally prolonged by redundant records checks. Mr. Harvey seems to imply as much. (*See* Opp'n 10, Doc. No. 109-2.) This argument presupposes Officer Butcher knew or could assume Officer Simpson had already run the same record checks as Officer Butcher. It also presupposes Officer Butcher knew or could assume the results of those checks, since he knew Officer Simpson had ultimately let Mr. Harvey drive away. If this were true, Officer Butcher's

---

*Pahls*, 718 F.3d at 1231–32. Officer Simpson did not supervise Officer Butcher. He was not present during the search of Mr. Harvey's vehicle. He did not participate in it or direct it. And even if he had done so, the search was supported by probable cause.

checks would have served no purpose other than to prolong the traffic stop (thereby allowing him to run the narcotics-dog around the car).  But the record does not support these assumptions. Even though Officer Butcher knew Officer Simpson had stopped Mr. Harvey, he did not know whether Officer Simpson conducted records checks or what the results of any checks were. (Butcher Aff. ¶¶ 7, 9, Doc. No. 104-7.)  Even if Officer Butcher could reasonably assume Officer Simpson had run checks, he did not know what type.  (Simpson Aff. ¶¶ 33–34, Doc. No. 104-3.) The record shows police officers can run different kinds of checks yielding different results depending on the type of request, whether an officer or a dispatcher conducts the check—or even which dispatcher completes it.  (*Id.* ¶ 45; Butcher Aff. ¶ 52, Doc. No. 104-7.)  Officer Butcher operated on a different dispatch channel from Officer Simpson, so he did not hear Officer Simpson's radio traffic or records requests.  (Butcher Aff. ¶ 9, Doc. No. 104-7.)  These facts make it unreasonable to impute knowledge to Officer Butcher, and they undermine any claim that redundant record checks improperly prolonged the stop.

Because Mr. Harvey failed to offer evidence in support of his claim that Officer Butcher's conduct during the traffic stop, detention, and search violated Mr. Harvey's Fourth Amendment rights, the court's inquiry is complete.  *See McCauley*, 478 F.3d at 1114.  Where Officer Butcher's conduct was constitutionally proper, qualified immunity protects him from suit on Mr. Harvey's § 1983 claims related to Officer Butcher's actions under the Fourth Amendment.  *See Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1207 (10th Cir. 2008) (finding even "arguable reasonable suspicion" entitled officer to qualified immunity).  The undersigned RECOMMENDS the district judge GRANT the Officer Defendants' Motion for Summary Judgment on these claims as it pertains to Officer Butcher.

### B.  Fourteenth Amendment Claims: Equal Protection

Mr. Harvey contends the Officer Defendants violated his Fourteenth Amendment rights by restricting his travel and selectively enforcing the law against him based on his race.  (Opp'n 16, 36, Doc. No. 109-2.)  The Fourteenth Amendment to the Constitution guarantees equal protection under the law and prohibits the deprivation of life, liberty, and property without due process.  U.S. Const. amend XIV, § 1.  To prevail on his claim, Mr. Harvey would need to "com[e] forward with sufficient facts to show that the defendant[s'] actions violated a federal constitutional or statutory right."  *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1255 (10th Cir. 1980).  If Mr. Harvey could establish the Officer Defendants selectively enforced the laws against him based on his race, this would run afoul of the Equal Protection Clause of the Constitution.  *See Whren*, 517 U.S. at 813.  To prevail on such a claim, Mr. Harvey would need to show both that a discriminatory purpose motivated the Officer Defendants' conduct, at least in part, and that their conduct had a discriminatory effect.  *See Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1168 (10th Cir. 2003).  This is a difficult standard to meet because a presumption of constitutionality exists for police conduct in the equal-protection context.  *Id.* at 1167.  Absent "clear evidence to the contrary," traffic stops and arrests are presumed not to violate the Equal Protection Clause.  *Id.*

Mr. Harvey has not met this strict standard, which means the Officer Defendants merit qualified immunity.  The record evidence shows Mr. Harvey's race was not a factor motivating either Officer Simpson or Officer Butcher.  Neither Officer Simpson nor Officer Butcher knew Mr. Harvey was black until after stopping his vehicle.  (Butcher Aff. ¶¶ 42–45, Doc. No. 104-7; Simpson Aff. ¶¶ 36–38, Doc. No. 104-3.)  The officers did not communicate about Mr. Harvey's race.  (Butcher Aff. ¶ 10, Doc. No. 104-7; Simpson Aff. ¶ 35, Doc. No. 104-3.)  And Officer

Butcher's decisions to conduct a dog sniff and to search Mr. Harvey's vehicle were not motivated by Mr. Harvey's race.  (Butcher Aff. ¶¶ 44–45, Doc. No. 104-7.)

As previously noted, Mr. Harvey did supply evidence his neighbor, Kevin Richter, is able to distinguish Mr. Harvey's race through the windows of Mr. Harvey's car.  (Aff. of Kevin Richter ¶¶ 3–4, Doc. No. 110.)  Mr. Harvey also attested that "a reasonably sighted person" would be able to discern the driver's race through the car window.  (Harvey Aff. ¶ 4, Doc. No. 109-3, at 2.)  Mr. Harvey submits these affidavit statements to refute the Officer Defendants' claims about their inability to discern his race before the stops.  But Mr. Richter's experience does not inform the officers' experiences.  And even if the officers had seen Mr. Harvey's race, it does not automatically follow that their actions were *motivated by* his race.  Indeed, the unrefuted evidence shows the Officer Defendants' actions were not racially motivated.

For this reason, Mr. Harvey's Fourteenth Amendment claims against both Officer Simpson and Officer Butcher do not survive summary judgment.  The undersigned RECOMMENDS the district judge GRANT the Officer Defendants' summary judgment motion as it pertains to Mr. Harvey's Fourteenth Amendment claims.

### C.  Eighth Amendment Claim: Cruel and Unusual Punishment

Mr. Harvey alleges he was subject to cruel and unusual punishment in violation of the Eighth Amendment where he was left in frigid temperatures, waiting for a supervisor to show up before the search of his car.  (Am. Compl. ¶¶ 55–57, Doc. No. 19.)  The Officer Defendants are entitled to qualified immunity on this claim because the Eighth Amendment is inapplicable to these circumstances.  The Eighth Amendment solely applies to formal punishment; it is "only applicable following a determination of guilt after a trial or plea."  *Crowe v. Clark*, 552 F. App'x 796, 799 (10th Cir. 2014) (unpublished) (quoting *Weimer v. Schraeder*, 952 F.2d 336, 340 n.5

(10th Cir. 1991)); *see also* U.S. Const. amend. VIII.  It does not encompass events occurring during a traffic stop.  No record facts support Mr. Harvey's Eighth Amendment claim; thus, the undersigned RECOMMENDS the district judge GRANT summary judgment to the Officer Defendants on this claim.

### D.  42 U.S.C. § 1985: Conspiracy Claim

Mr. Harvey's § 1985 claims appear to allege a conspiracy between Officers Simpson and Butcher to deprive him of his rights and privileges, denying him equal protection of the laws. *See* 42 U.S.C. § 1985(3).  For this category of a § 1985 claim to apply, a plaintiff must allege a conspiracy "motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'"  *Tilton*, 6 F.3d at 684 (quoting *Griffin*, 403 U.S. at 102).  Moreover, to succeed on a conspiracy claim, a plaintiff must prove both a conspiracy and "an actual deprivation of rights."  *Snell v. Tunnell*, 920 F.2d 673, 701 (10th Cir. 1990).  Qualified immunity can provide immunity from suit under § 1985.  *Bisbee v. Bey*, 39 F.3d 1096, 1102 (10th Cir. 1994).

Mr. Harvey alleges the Officer Defendants conspired to deprive him of his right to be free from unreasonable seizures and searches and his right to be free from cruel and unusual punishment based on his race.  (Am. Compl. ¶¶ 18, 50, 57, 63(c), Doc. No. 19.)  But Mr. Harvey's claims fail at the outset because, as outlined above, Mr. Harvey has not asserted facts suggesting the Officer Defendants deprived Mr. Harvey of these rights, let alone that they planned and conspired together to do so.  Put differently, where the Officer Defendants are entitled to qualified immunity on the underlying claims of constitutional violations, they are also entitled to qualified immunity for the conspiracy claims based on the same alleged violations.

*See N.E.L. v. Douglas Cnty., Colo.*, 740 F. App'x 920, 931 n.22 (10th Cir. 2018) (unpublished); *Snell*, 920 F.2d at 701; *McMillan v. Wiley*, 813 F. Supp. 2d 1238, 1251–52 (D. Colo. 2011).

Moreover, as discussed above, Mr. Harvey has offered no specific evidence to support his claim that either Officer Simpson's or Officer Butcher's actions were motivated by Mr. Harvey's race.  Indeed, the unrefuted evidence shows Mr. Harvey's race did not affect their actions.  (*See* Butcher Aff. ¶¶ 10, 42–45, Doc. No. 104-7; Simpson Aff. ¶¶ 35–38, Doc. No. 104-3.)  Mr. Harvey simply fails to point to "specific, nonconclusory evidence" of a discriminatory or improper motive.  *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 650 (10th Cir. 1988).

Where Mr. Harvey has not shown any underlying constitutional violations or that Officer Simpson's or Officer Butcher's action were based on his race, the Officer Defendants are entitled to qualified immunity on these claims.  The undersigned RECOMMENDS the court GRANT summary judgment to the officers on Mr. Harvey's § 1985 claims.

### E.  Utah Constitutional Claims

Lastly, Mr. Harvey seems to make a claim under Section 7 and Section 14 of Article 1 of the Utah Constitution.  Although Mr. Harvey identifies these provisions in his causes of action, (Am. Compl. 14, Doc. No. 19), he fails to articulate how they apply to his circumstances.[14] Section 7 of the Utah Constitution indicates, "[n]o person shall be deprived of life, liberty or property, without due process of law," while Section 14 prohibits unreasonable searches and seizures.  Utah Const. art 1, §§ 7, 14.  In other words, these provisions somewhat mirror Mr. Harvey's federal claims.  And, as with his federal claims, none of the assertions in Mr. Harvey's

---

[14] Mr. Harvey cites these constitutional provisions in the heading of his second cause of action but makes no arguments specific to them.

Amended Complaint or briefing provide a basis for avoiding a grant of summary judgment to the Officer Defendants.

To make a claim for damages under the Utah Constitution, a plaintiff must establish: (1) a "'flagrant' violation of his or her constitutional rights; (2) existing remedies do not redress his or her injuries; and (3) equitable relief, such as an injunction, was and is wholly inadequate to protect the plaintiff's rights or redress his or her injuries." *Jensen v. Cunningham*, 2011 UT 17, ¶ 58, 250 P. 3d 645 (internal quotation marks omitted). As in the § 1983 context, this requires a defendant to have violated clearly established constitutional rights—viewed from the perspective of a reasonable person. *Spackman v. Bd. of Educ. of Box Elder Cnty. Sch. Dist.*, 2000 UT 87, ¶¶ 23–25, 16 P.3d 533. No flagrant violation exists "if there was a reasonable basis to warrant a particular intrusion." *Wood v. Farmington City*, 910 F. Supp. 2d 1315, 1329 (D. Utah 2012) (quoting *Jensen*, 2001 UT at ¶ 98).

As addressed above, neither Officer Simpson nor Officer Butcher flagrantly violated Mr. Harvey's constitutional rights. Officer Simpson's stop and resulting detention of Mr. Harvey was reasonable, as was Officer Butcher's stop, resulting detention, dog sniff, and search. Viewing these record facts under the purview of the Utah Constitution does not change this analysis. Mr. Harvey would need to point to record facts sufficient to show violations of rights protected by the Utah Constitution for these claims to survive. This, he does not do. For this reason, the undersigned RECOMMENDS the district judge GRANT summary judgment to the Officer Defendants on Mr. Harvey's claims under the Utah Constitution.

## IV.     RECOMMENDATION

For the reasons set forth above, the undersigned RECOMMENDS the district judge GRANT the Officer Defendants' Motion for Summary Judgment (Doc No. 104) on the grounds that qualified immunity protects them from liability.

The court will send copies of this Report and Recommendation to the parties, who are notified of their right to object to the same.  The parties must file any objection to this Report and Recommendation with the court clerk, pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure, within fourteen (14) days of receiving it.  Failure to do so may constitute waiver of objections upon subsequent review.

DATED this 2nd day of February, 2021.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge