IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| TL HARVEY, <br><br> Plaintiff, <br><br> v. <br><br> JAKE BUTCHER, *et al.*, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING DEFENDANTS JAKE BUTCHER AND THOMAS SIMPSON'S MOTION FOR SUMMARY JUDGMENT** <br><br> Case No. 1:18-cv-00008-JNP-DAO <br><br> District Judge Jill N. Parrish |

Before the court is Defendant TL Harvey's ("Mr. Harvey") objection to Magistrate Judge Daphne A. Oberg's Report and Recommendation to Grant Defendants Jake Butcher ("Butcher") and Thomas Simpson's ("Simpson") Motion for Summary Judgment (ECF No. 118). ECF No. 119. For the following reasons, the court overrules Mr. Harvey's objection and adopts in full Magistrate Judge Oberg's Report and Recommendation.

## BACKGROUND

Mr. Harvey proceeds pro se and brings this cause of action under 42 U.S.C. §§ 1983 and 1985. He alleges several federal and state constitutional violations arising out of two consecutive traffic stops—the first stop performed by Simpson and the second by Butcher—and a subsequent detention and search of his vehicle. The court referred this matter to a magistrate judge pursuant

to 28 U.S.C. § 636(b)(1)(B).[1] Mr. Harvey's two remaining claims[2] are stated against Defendants Butcher and Simpson (collectively, "Defendants"), two Utah Highway Patrol ("UHP") Officers, in their official and individual capacities.

On June 5, 2020, Defendants moved for summary judgment under Federal Rule of Civil Procedure 56 on all claims asserted against them. ECF No. 104. Defendants argued that they are entitled to qualified immunity on each of the federal claims asserted against them. Defendants also argued that Mr. Harvey failed to identify the basis of his claims under the Utah Constitution, and alternatively that he failed to establish any flagrant violation of the Utah Constitution. On February 2, 2021, Magistrate Judge Oberg issued a Report and Recommendation to Grant Defendants Jake Butcher and Thomas Simpson's Motion for Summary Judgment, finding that Defendants were entitled to qualified immunity with respect to the federal claims asserted against them and that Mr. Harvey failed to show a flagrant violation of his rights under the Utah Constitution. ECF No. 118. At the conclusion of her Report and Recommendation, Magistrate Judge Oberg notified the parties that, pursuant to 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b), any objection that they wished to file in response to her Report and Recommendation must be filed "within fourteen (14) days of receiving it" and that a failure to raise a timely objection "may constitute waiver of objections upon subsequent review." *Id.* at 28.

---

[1] On June 26, 2018, this case was referred to Magistrate Judge Evelyn J. Furse. ECF No. 10. On May 15, 2020, this case was reassigned to Magistrate Judge Oberg. ECF No. 99.

[2] In his Amended Complaint, Mr. Harvey sought damages from Keith Squires ("Squires"), the Commissioner of the Utah Department of Public Safety Highway Patrol, in his individual capacity, and from Butcher and Simpson, two Utah Highway Patrol Officers, in their official and individual capacities. ECF No. 19. On May 18, 2020, the court adopted Magistrate Judge Furse's Report and Recommendation and dismissed Mr. Harvey's third and only cause of action against Squires. ECF No. 100.

On February 19, 2021, Mr. Harvey timely objected to Magistrate Judge Oberg's Report and Recommendation. ECF No. 119. Accordingly, the court "must determine de novo" the portions of Magistrate Judge Oberg's Report and Recommendation to which Mr. Harvey has specifically objected. FED. R. CIV. P. 72(b)(2), (3). On February 22 and 24, 2021, additional memoranda containing objections to Magistrate Judge Oberg's Report and Recommendation were delivered to the court. ECF Nos. 120, 121, 122. The court addresses Mr. Harvey's additional memoranda and his timely filed objection in turn.

## DISCUSSION

I.   **Mr. Harvey's Additional Memoranda**

　　A.　　Objecting to a Magistrate Judge's Report and Recommendation Under the Federal Rules of Civil Procedure

Under Federal Rule of Civil Procedure 72(b)(2), "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." FED. R. CIV. P. 72(b)(2). The Advisory Committee Notes to this rule provide that this fourteen-day period is subject to Rule 6(d), "which provides for an additional 3-day period when service is made by mail." *See* FED. R. CIV. P. 72(b) advisory committee's note to 1983 addition.[3] Rule 6 provides the method to compute "any time period

---

[3] The Advisory Committee's Note to the 1983 Addition reflects the previous ten-day period in which a party may have objected to a magistrate judge's proposed findings and recommendations and refers to Rule 6(e) in providing for three additional days when service is made by mail. FED. R. CIV. P. 72(b) advisory committee's note to 1983 addition. In 2009, the ten-day objection window was extended to fourteen days. FED. R. CIV. P. 72 advisory committee's note to 2009 amendment. Additionally, Rule 6(e) has been replaced by Rule 6(d). *See* FED. R. CIV. P. 6(d); FED. R. CIV. P. 6 advisory committee's note to 2016 amendment (recognizing Rule 6(d) as replacing Rule 6(e)).

specified in these rules." FED. R. CIV. P. 6(a). "When the period is stated in days or a longer unit of time," the computation proceeds as follows:

> (A) exclude the day of the event that triggers the period;
> (B) count every day, including intermediate Saturdays, Sundays, and legal holidays;
> (C) include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.

FED. R. CIV. P. 6(a)(1). "Last day" is defined as "midnight in the court's time zone" if filing electronically, and "when the clerk's office is scheduled to close" if "filing by other means." FED. R. CIV. P. 6(a)(4). Finally, if a party "may or must act within a specified time after being served," and is served by mail, "3 days are added after the period would otherwise expire under Rule 6(a)." FED. R. CIV. P. 6(d).

Here, Magistrate Judge Oberg filed her Report and Recommendation and sent it to the parties on February 2, 2021. Mr. Harvey proceeds pro se and is served by mail. Implementing the calculation methods set forth in Rule 6 to determine when Mr. Harvey's objection to the Report and Recommendation was due, the court excludes February 2, 2021 as the "day of the event that triggers the period," and then counts "every day, including intermediate Saturdays, Sundays, and legal holidays" as well as "the last day of the period." *See* FED. R. CIV. P. 6(a)(1). Because Mr. Harvey was served by mail, the court also adds three days to its calculation pursuant to Rule 6(d). The result is that Mr. Harvey had seventeen calendar days in which to object to the Report and Recommendation, and his objection was therefore due on February 19, 2021.

Mr. Harvey filed his first objection to the Report and Recommendation on February 19, 2021. ECF No. 119. This objection was timely, as it was filed on the last day permitted by the Federal Rules of Civil Procedure. Additional memoranda setting forth more objections to the

Report and Recommendation were delivered to the court on February 22 and 24, 2021.[4] ECF Nos. 120, 121, 122. These additional memoranda are not timely, as they were filed three and five days, respectively, after the last day that Mr. Harvey was permitted to file his objections to the Report and Recommendation. Because these additional memoranda were not timely filed, the court must determine whether Mr. Harvey has waived the objections contained therein.

B.     Waiver of District Court Review

The Tenth Circuit "has adopted a firm waiver rule under which a party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. INS*, 418 F.3d 1116, 1119 (10th Cir. 2005); *see also United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996) ("[W]e hold that a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."). There are two exceptions to this "firm waiver rule": "when (1) a *pro se* litigant has not been informed of the time period for objecting and the consequences of failing to object, or when (2) the 'interests of justice' require review." *Morales-Fernandez*, 418 F.3d at 1119 (citations omitted).

1)     Uninformed Pro Se Litigant Exception

Here, the first exception to the firm waiver rule does not apply. Magistrate Judge Oberg clearly stated at the conclusion of her Report and Recommendation that the parties would have fourteen days from receipt to object to its contents and a failure to raise a timely objection "may

---

[4] Because Mr. Harvey's additional memoranda were delivered to the court and not mailed, he cannot take advantage of the mailbox rule.

5

constitute waiver of objections upon subsequent review." ECF No. 118 at 28. Magistrate Judge Oberg's warning was "in clear English," and she "attempted to apprise Mr. [Harvey] of the consequences of a failure to object." *Morales-Fernandez*, 418 F.3d at 1119. Mr. Harvey also has not indicated that he was unaware of this deadline. Accordingly, Mr. Harvey "cannot avail himself of the first exception to the waiver rule." *Duffield v. Jackson*, 545 F.3d 1234, 1238 (10th Cir. 2008).

        2)        Interests of Justice Exception

The second exception regarding the "interests of justice" also does not apply. While the "interests of justice" is an "elusive concept," there are several factors to consider in determining whether this exception is triggered: "a pro se litigant's effort to comply, the force and plausibility of the explanation for his failure to comply, and the importance of the issues raised." *Morales-Fernandez*, 418 F.3d at 1119–20. In considering "whether the importance of the issues raised might trigger the 'interests of justice' exception," the Tenth Circuit has observed that, "[i]n many respects, the interests of justice analysis we have developed, which expressly includes review of a litigant's unobjected-to substantive claims on the merits, is similar to reviewing for plain error." *Duffield*, 545 F.3d at 1238 (citation omitted). To show plain error, Mr. Harvey would have to establish "(1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (citation omitted).

The first factor does not weigh in favor of overlooking the firm waiver rule. Mr. Harvey has demonstrated an ability to file a timely objection—he did so when he timely filed his first set of objections on February 19, 2021 (ECF No. 119). Mr. Harvey also could have requested an extension to file additional objections, but he did not do so. *See Graham v. Waters*, 805 F. App'x 572, 576–77 (10th Cir. 2020) (unpublished) (declining to apply an exception to the "firm waiver

6

rule" in part when a pro se litigant could have filed a timely objection and did not request an extension).

The second factor also does not support deviation from the firm waiver rule. Mr. Harvey offers no explanation for his failure to timely file his additional memoranda—he only states that they should be considered "as part of the first Pleading dated and submitted to the court on February 19, 2021," (ECF Nos. 121 at 2; 122 at 2) without elaboration. This conclusory statement is insufficient to overcome the firm waiver rule. Filing one timely objection does not permit Mr. Harvey to hold the door open for additional, untimely objections.

Finally, the third factor does not weigh in favor of disregarding the firm waiver rule. Although Mr. Harvey raises generally important issues in his untimely objections regarding discovery, the constitutionality of the second traffic stop to which he was subjected, and the applicability of qualified immunity, these are essentially reassertions of the arguments that he made before Magistrate Judge Oberg in opposition to the Defendants' Motion for Summary Judgment. *See Kansas v. Rambo*, 743 F. App'x 246, 248–49 (10th Cir. 2018) (unpublished) (finding that a pro se litigant did not "raise any issues of sufficient importance to overcome his waiver" in part when he "simply reassert[ed] the arguments he initially made to the magistrate judge"). Moreover, in reviewing the portions of Magistrate Judge Oberg's Report and Recommendation to which Mr. Harvey did not timely object, the court finds no plain error. The Report and Recommendation is "well-reasoned and well-supported"; the court finds that Magistrate Judge Oberg did not "commit[] any error, let alone a plain error." *Pham v. Ahrens*, 569 F. App'x 559, 562 (10th Cir. 2014) (unpublished). Accordingly, the interests of justice do not compel this court to deviate from the firm waiver rule.

7

Because Mr. Harvey's additional memoranda objecting to the Report and Recommendation (ECF Nos. 120, 121, 122) were not timely filed[5] and neither exception to the firm waiver rule applies, Mr. Harvey has waived the arguments contained therein. Accordingly, the court will only conduct a de novo review of the contents of Mr. Harvey's timely objection.

## II.    Mr. Harvey's Timely Objection

In his timely objection to Magistrate Judge Oberg's Report and Recommendation (ECF No. 119), Mr. Harvey does not clearly identify the portions of the Report and Recommendation to which he objects. Because Mr. Harvey is a pro se plaintiff, however, the court will read his objection liberally. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). In doing so, the court has identified two principal objections to the Report and Recommendation. First, Mr. Harvey

---

[5] The court notes that Mr. Harvey's Affidavit in Support of Motion in Opposition to Magistrate Judge Oberg Report and Recommendation (the "Affidavit") (ECF No. 120) is also untimely under Federal Rule of Civil Procedure 56(d). Mr. Harvey's Affidavit seeks relief under Rule 56(d), asking the court to either deny Defendants' Motion for Summary Judgment or to reopen discovery. Rule 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential *to justify its opposition*, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

FED. R. CIV. P. 56(d) (emphasis added). Mr. Harvey's invocation of Rule 56(d) is untimely. This rule contemplates a nonmovant's inability to respond to a motion for summary judgment; it is not to be invoked in response to a magistrate judge's report and recommendation, which was issued after the parties had fully briefed the motion for summary judgment. Defendants filed their Motion for Summary Judgment on June 5, 2020. ECF No. 104. Mr. Harvey filed his Opposition on July 27, 2020 (ECF No. 109), and Defendants filed their Reply on September 1, 2020 (ECF No. 115). If Mr. Harvey wished to obtain relief under Rule 56(d), the proper time to do so was prior to filing his Opposition. *See* Fed. R. Civ. P. 56(d) advisory committee's note to 2010 amendment ("A party who seeks relief under subdivision (d) may seek an order *deferring the time to respond to the summary-judgment motion*." (emphasis added)).

objects to the conclusions that Simpson's stop of his vehicle[6] did not violate his Fourth Amendment rights and Simpson is therefore entitled to qualified immunity on the § 1983 claims asserted against him related to this conduct. Second, Mr. Harvey objects to the conclusion that an adverse inference as a spoliation sanction was not warranted with respect to Butcher's failure to preserve his dash cam and body cam footage related to his stop of Mr. Harvey.[7]

The court addresses each of these objections in turn under a de novo standard of review and ultimately overrules Mr. Harvey's objections. Magistrate Judge Oberg's Report and Recommendation is adopted in full.

A. Constitutionality of Simpson's Traffic Stop Under the Fourth Amendment and Resulting Qualified Immunity from Liability

   1) Fourth Amendment

The Fourth Amendment to the United States Constitution protects against "unreasonable searches and seizures." U.S. CONST. amend. IV. "'[A] relatively brief encounter,' a routine traffic stop is 'more analogous to a so-called "*Terry* stop" . . . than to a formal arrest.'" *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (quoting *Knowles v. Iowa*, 525 U.S. 113, 117 (1998)).

---

[6] While Mr. Harvey refers to both Simpson and Butcher in his timely objection—both by name and collectively as "highway men"—Mr. Harvey is only sufficiently specific in objecting to Simpson's conduct. *See* ECF No. 119 at 4. Accordingly, the court will limit its de novo review to Simpson's conduct as specifically articulated in Mr. Harvey's timely objection. *See One Parcel*, 73 F.3d at 1060 ("[O]nly an objection that is sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute will advance the policies behind the Magistrate's Act . . . [and] preserve an issue for de novo review by the district court or for appellate review.").

[7] In his timely objection, Mr. Harvey also discusses the discovery issues that he has faced in this litigation. However, these discovery issues are beyond the scope of Magistrate Judge Oberg's Report and Recommendation (ECF No. 118). Moreover, this court has already affirmed Magistrate Judge Furse's Discovery Order (ECF No. 89) addressing these very issues. ECF No. 117.

Accordingly, to effectuate a constitutional traffic stop, a police officer must have either "(1) probable cause to believe a traffic violation has occurred, or (2) a reasonable articulable suspicion that a particular motorist has violated any of the traffic or equipment regulations of the jurisdiction." *United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir. 2009) (citation omitted).

Once a traffic stop is initiated, the "tolerable duration" of the stop "is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop and attend to related safety concerns." *Rodriguez*, 575 U.S. at 354 (citations omitted). "Because addressing the infraction is the purpose of the stop, [the stop] may 'last no longer than is necessary to effectuate th[at] purpose.'" *Id.* (citations omitted). Accordingly, "[a] seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). An officer "may conduct certain unrelated checks during an otherwise lawful traffic stop," although "he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Rodriguez*, 575 U.S. at 355. "An officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." *Arizona v. Johnson*, 555 U.S. 323, 333 (2009) (citation omitted).

"Beyond determining whether to issue a traffic ticket, an officer's mission includes 'ordinary inquiries incident to [the traffic] stop.' Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez*, 575 U.S. at 355 (citations omitted). "These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly." *Id.* (citations omitted).

Here, Magistrate Judge Oberg recommended that this court grant Defendants' Motion for Summary Judgment with respect to Simpson's traffic stop of Mr. Harvey, having found after a thorough analysis that Simpson's conduct did not violate Mr. Harvey's Fourth Amendment rights. Mr. Harvey objects to this recommendation on two grounds. First, Mr. Harvey argues that the seventeen- or eighteen-minute stop was unconstitutional because "Simpson prolonged the stop by his questions unrelated to the mission at hand." ECF No. 119 at 4. Second, Mr. Harvey argues that Simpson "prolonged the alleged observed traffic violation when he called ahead to highway man Butcher and instructed Butcher to stop Plaintiff and use your dog," thereby further violating Mr. Harvey's Fourth Amendment rights. *Id.* The court overrules Mr. Harvey's objection to the constitutionality of Simpson's traffic stop on both grounds.

a) Simpson's Questions

Mr. Harvey does not specify which of Simpson's questions during the stop were "unrelated to the mission at hand." However, in construing his objection liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the court assumes that Mr. Harvey is referring to Simpson's questions regarding where Mr. Harvey lived, where he was going, where he was coming from, and the discrepancy related to Mr. Harvey's vehicle registration, license plates, and Mr. Harvey's statement about where he was from. ECF No. 104-3 ¶¶ 17, 19, 21–23. Mr. Harvey appears to argue that these questions were unrelated to the reason that he had been stopped—his apparent violation of Utah's window tinting laws—and unconstitutionally prolonged the traffic stop in violation of the Fourth Amendment.

Mr. Harvey spends a great portion of his objection arguing that Magistrate Judge Oberg failed to heed and apply the legal standards related to traffic stops set forth in *Rodriguez v. United States*, 575 U.S. 348 (2015). However, not only did Magistrate Judge Oberg specifically cite

11

*Rodriguez*'s legal standards throughout her Report and Recommendation (*see* ECF No. 118 at 13, 15, 20), she also correctly applied them in her thorough analysis of Simpson's traffic stop. As *Rodriguez* provides, an officer "may conduct certain unrelated checks during an otherwise lawful traffic stop," he just "may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." 575 U.S. at 355. Such "unrelated checks" include "ordinary inquiries incident to [the traffic] stop," such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* (citations omitted). Simpson's inquiries regarding Mr. Harvey's travel plans are "ordinary inquiries" incident to a traffic stop. The Tenth Circuit has "repeatedly held" that "questions relating to a driver's travel plans ordinarily fall within the scope of a traffic stop." *United States v. Williams*, 271 F.3d 1262, 1267 (10th Cir. 2001) (citations omitted); *see also United Sates v. Moore*, 795 F.3d 1224, 1229 (10th Cir. 2015) ("An officer may also generally inquire about the driver's travel plans and ask questions, whether or not related to the purpose of the stop, so long as they do not prolong the stop." (citations omitted)). Additionally, Simpson's question regarding the discrepancy between Mr. Harvey's vehicle registration, license plates, and Mr. Harvey's statement about where he was from is part of "inspecting the automobile's registration," which *Rodriguez* expressly contemplates as an "ordinary inquir[y] incident to [the traffic stop]." *See* 575 U.S. at 355.

Based upon its de novo review, the court finds that Simpson's additional inquiries as he was performing a window tint inspection and writing Mr. Harvey a warning for his window tint violation did not measurably extend the duration of this seventeen- or eighteen-minute stop. *See United States v. Gevorkyan*, No. 2:08-CR-106TC, 2009 U.S. Dist. LEXIS 5688, at *14–15 (D. Utah Jan. 27, 2009) (unpublished) (holding that a trooper's additional questions related to a

driver's travel plans "were reasonable and did not impermissibly exceed the scope" of a traffic stop for a window tint violation when the trooper asked the questions upon initiating the stop and as he was performing the window tint measurement and issuing a citation). Mr. Harvey's objection on this basis is accordingly overruled.

### b) Simpson's Call to Butcher

Mr. Harvey also argues that Simpson's call ahead and instruction to Butcher to stop Mr. Harvey unconstitutionally prolonged his traffic stop. The court disagrees. "Normally, [a traffic] stop ends when the police have no further need to control the scene, and inform the driver and passengers they are free to leave." *Johnson*, 555 U.S. at 333; *see also United States v. Manjarrez*, 348 F.3d 881, 885 (10th Cir. 2003) ("A stop generally ends when the officer returns the driver's license, registration, and insurance information. At this point, questioning must cease and the driver must be free to go." (citations omitted)). Simpson's call to Butcher occurred after Simpson returned Mr. Harvey's license and registration, issued Mr. Harvey a warning, and told Mr. Harvey that he was free to leave, and Mr. Harvey drove away. ECF No. 104-3 ¶¶ 26, 28–29. Thus, the call was made after Simpson's traffic stop of Mr. Harvey had concluded and therefore cannot be said to have extended a stop that was already complete. Mr. Harvey's objection on this basis is overruled.

### 2) Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials

from harassment, distraction, and liability when they perform their duties reasonably." *Id.* "When a defendant raises an affirmative defense of qualified immunity, the burden rests with the plaintiff to show that the defendant's actions fall outside the scope of the immunity." *Poolaw v. Marcantel*, 565 F.3d 721, 729 (10th Cir. 2009). At the summary judgment stage, a plaintiff must establish: "(1) that the defendant violated his constitutional or statutory rights, and (2) that the constitutional right was clearly established at the time of the alleged unlawful activity." *Swanson v. Town of Mountain View, Colo.*, 577 F.3d 1196, 1999 (10th Cir. 2009) (citation omitted). Because of "the complexities of resolving the question of constitutional liability," the court has discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* (quoting *Pearson*, 555 U.S. at 236).

Because the court concludes that Simpson's conduct during his traffic stop of Mr. Harvey did not violate Mr. Harvey's constitutional rights, the court finds that Mr. Harvey has not met his burden to establish that qualified immunity does not apply. Mr. Harvey argues that the legal standards set forth in *Rodriguez* were clearly established law at the time of Simpson's stop, but the legal standards in *Rodriguez* support the constitutionality of Simpson's conduct under the Fourth Amendment. Accordingly, Simpson is entitled to qualified immunity on the § 1983 claims related to his conduct under the Fourth Amendment. Mr. Harvey's objection is overruled.

B.   Spoliation Sanction

Mr. Harvey's second objection targets Magistrate Judge Oberg's finding that he is not entitled to an adverse inference as a spoliation sanction for Butcher's failure to preserve his dash

cam and body cam footage[8] from his January 11, 2016 stop of Mr. Harvey. "Spoliation is . . . the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for its destruction." *Moreno v. Taos Cty. Bd. of Comm'rs*, 587 F. App'x 442, 444 (10th Cir. 2014) (citation omitted) (unpublished). "Spoliation sanctions are proper when '(1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence.'" *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009) (citation omitted). "[I]f the aggrieved party seeks an adverse inference to remedy the spoliation, it must also prove bad faith. 'Mere negligence in losing or destroying records is not enough . . . .'" *Id.* (citation omitted).

Mr. Harvey has not provided evidence that Butcher knew or should have known that litigation related to his traffic stop of Mr. Harvey was imminent. In his opposition to Defendants' Motion for Summary Judgment, Mr. Harvey provided a copy of a January 5, 2017 letter that his attorney sent to UHP providing notice of the legal action that he was taking against Butcher related to his January 11, 2016 stop of Mr. Harvey. ECF No. 109-3 at 125. This letter was sent nearly one year after the traffic stop at issue, and long after the conclusion of UHP's sixty-day retention policy that Butcher stated was in place at the time (ECF Nos. 115 at 17, 115-4 at 5). Mr. Harvey has also not provided evidence of bad faith. Mr. Harvey argues in his timely objection that he "placed into the record evidence showing that at the time the retention policy of the Department of Safety for the State of Utah was to keep all video for a period of at least a year for any notice of pending litigation." ECF No. 119 at 6. However, Mr. Harvey does not cite this evidence in his timely

---

[8] Mr. Harvey references both Butcher's dash cam and body cam footage of his traffic stop, but there has been no evidence presented that there ever was body cam footage from this traffic stop.

objection. Upon review of Mr. Harvey's opposition to Defendants' Motion for Summary Judgment, the court found Mr. Harvey's Statement of Facts, in which he asserts that UHP had a one-year document retention policy (ECF No. 109-1 at 24), but this assertion is not supported by any record evidence. In contrast, Defendants provided evidence that Butcher destroyed the dash cam footage from his stop of Mr. Harvey pursuant to a UHP retention policy in effect at the time of the stop that required officers to maintain dash cam footage only for sixty days. ECF Nos. 115 at 17, 115-4 at 5. In his response to interrogatories, Butcher stated his understanding of the UHP sixty-day retention policy and explained that he "deleted the recording of Mr. Harvey's stop, at some point after sixty-days elapsed from the date [he] stopped Mr. Harvey, as was [his] routine practice at the time." ECF No. 115-4 at 5. This explanation does not support finding bad faith on the part of Butcher.

Even assuming that Mr. Harvey was prejudiced by the destruction of the dash cam footage and construing the evidence in the light most favorable to Mr. Harvey, the court does not find that a rational jury could find in favor of Mr. Harvey on this issue considering the evidence presented. *See In re Estate of Booker*, 745 F.3d 405, 411 (10th Cir. 2014); *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013). Accordingly, the court finds that Mr. Harvey is not entitled to an adverse inference as a spoliation sanction for Butcher's failure to preserve his dash cam and body cam footage.

### III.    Remaining Portions of the Report and Recommendation

Mr. Harvey's timely objection to Magistrate Judge Oberg's Report and Recommendation addresses the issues noted above. He does not argue that Defendants are not entitled to qualified immunity with respect to his Fourteenth Amendment equal protection claim, his Eighth Amendment cruel and unusual punishment claim, or his § 1985 conspiracy claim. He did not

timely object to Butcher's traffic stop. Mr. Harvey also does not object to Magistrate Judge Oberg's conclusion that he failed to state a claim under the Utah Constitution.

Due to his failure to object to any sections of the Report and Recommendation other than those addressed, Mr. Harvey has waived any argument that those sections were in error. *See One Parcel*, 73 F.3d at 1060. The court will decline to apply the waiver rule only if "the interests of justice so dictate." *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991). Having reviewed the Report and Recommendation, the court concludes that the remaining sections are not clearly erroneous. The court finds that the interests of justice do not warrant deviation from the waiver rule.

## CONCLUSION AND ORDER

For the foregoing reasons, the court hereby OVERRULES Mr. Harvey's objection (ECF No. 119) and ADOPTS IN FULL Magistrate Judge Oberg's Report and Recommendation (ECF No. 118). Defendants' Motion for Summary Judgment is GRANTED.

DATED March 29, 2021.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge