IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| TL HARVEY,<br><br>     Plaintiff,<br><br>v.<br><br>JAKE BUTCHER, *et al.*,<br><br>     Defendants. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS JAKE BUTCHER AND THOMAS SIMPSON'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 1:18-cv-00008-JNP-DAO<br><br>District Judge Jill N. Parrish |

On January 1, 2018, Plaintiff TL Harvey ("Mr. Harvey") proceeding *pro se*, filed a complaint against Defendants Jake Butcher ("Officer Butcher") and Thomas Simpson ("Officer Simpson") collectively ("Defendants"). ECF No. 1. Amongst other claims, Mr. Harvey asserted that Defendants had violated his Fourth Amendment rights by successively stopping him for a window tint violation and sought damages pursuant to 42 U.S.C. §§ 1983 and 1985. *Id.* Before the court is a motion for summary judgment based on qualified immunity filed by Defendants. ECF No. 104.

As Mr. Harvey was proceeding *pro se*, the matter was initially referred to Magistrate Judge Daphne Oberg. On February 2, 2021, Judge Oberg issued a Report and Recommendation in favor of granting Defendants' motion for summary judgment. ECF No. 118. Mr. Harvey filed a series of objections, of which only the first objection was timely. ECF Nos. 119, 120, 121, 122. The court construed Mr. Harvey's objections as solely against Officer Simpson's conduct and pertaining to the first traffic stop. ECF No. 123. After considering Mr. Harvey's objections, the court adopted

Magistrate Judge Oberg's Report and Recommendation in full and granted Defendants' motion. *Id.*

Mr. Harvey appealed the decision to the Tenth Circuit. ECF No. 127. On July 14, 2022, the Tenth Circuit reversed and remanded the court's prior order. The Tenth Circuit instructed the court to interpret Mr. Harvey's objections as concerning both officers' conduct and to examine "the constitutionality of both stops under the Fourth Amendment." ECF No. 145 at 2.

On September 20, 2022, the court held a status conference and ordered parties to file supplemental briefing on the constitutionality of the traffic stops. Having reviewed the supplemental briefing, the existing record, and the relevant law, the court DENIES Defendants' motion for summary judgment.[1]

## BACKGROUND

On January 11, 2016, Mr. Harvey was driving through Utah on his way to Wyoming. Harvey Dep. Ex. A, ECF No. 104-2, 34:20–25. At 2:24 p.m., Utah Highway Patrol Trooper Thomas Simpson stopped Mr. Harvey for a window tint violation. Simpson Daily Log, Ex. D, ECF No. 104-5. Utah prohibits drivers from operating a vehicle with front side windows that "allow less than 43% light transmittance." Utah Code § 41-6a-1635(1)(b) (2015). Officer Simpson measured the front side window of Mr. Harvey's vehicle at 27.5% light transmittance. Simpson Decl. Ex. B, ECF No. 104-3 ¶ 18. Because the window tint violated Utah law, Officer Simpson ran checks on Mr. Harvey's license and registration. *Id.* at ¶ 22. Officer Simpson gave Mr. Harvey a warning, and the traffic stop concluded at 2:40 p.m. Simpson Citation, Ex. C, ECF No. 104-4.

---

[1] On February 17, 2023, Mr. Harvey filed a motion for a timeline requesting an update on the status of this order. ECF No. 151. That motion is now MOOT.

Eight minutes after Mr. Harvey left, Officer Simpson contacted Utah Highway Patrol Trooper Jake Butcher who was located further down the highway and accompanied by a narcotics detection dog. The chat proceeded as follows:

> [Officer Simpson]: got a car for you to go stop.
>
> [Officer Butcher joins chat]
>
> [Officer Simpson]: I just let him go[.] [H]e['s] proba[bl]y at about milepost 100-101 on I-84 east
>
> [Officer Butcher]: what you got?
>
> [Officer Simpson]: red. Volks with [Arizona] plates
>
> [Officer Simpson]: it['s] a lease car so it[']s to the guy but he[']s from [M]inn[e]sota
>
> [Officer Simpson]: keeps do[d]ging my questions of where[] he[']s coming from
>
> [Officer Butcher]: ok [I']ll hurry and head that way
>
> [Officer Simpson]: window tint measured 27%
>
> [Officer Simpson]: so easy stop but if you can run your dog you might get something
>
> [Officer Butcher]: ok thanks. I[']ll watch for it
>
> [Officer Simpson]: AZ limit is 33% and MN limit is 50%
>
> [Officer Simpson]: either way he[']s under
>
> [Officer Butcher]: ok sounds good
>
> [Officer Simpson]: FYI he[']s been stopped prior in Utah for window tint accordi[n]g to RMS
>
> [Officer Simpson]: can[']t even see the driver through [t]he window tint

Redacted IM Transcript Ex. E, ECF No. 104-6.

3

At 3:07 p.m., less than thirty minutes after Officer Simpson had released Mr. Harvey, Officer Butcher stopped Mr. Harvey. Butcher Daily Log Ex. H, ECF No. 104-9. Officer Butcher maintains that he stopped Mr. Harvey because Officer Butcher "believed the tint on his windows violated Utah's window tint statute." Butcher Decl. Ex. F, ECF No 104-7 ¶¶ 15, 19. Mr. Harvey informed Officer Butcher that he had just been stopped for a window tint violation. *Id.* ¶ 20. Officer Butcher then asked Mr. Harvey for his license and registration. *Id.* ¶ 21.

While waiting for records checks on Mr. Harvey's license and registration, Officer Butcher walked his narcotics dog around Mr. Harvey's vehicle. *Id.* ¶ 23. The dog set off an alert. *Id.* ¶ 24. Officer Butcher notified Mr. Harvey of the dog's alert and instructed Mr. Harvey to exit his vehicle so that Officer Butcher could search the car. *Id.* ¶ 28–29. Mr. Harvey requested the presence of Officer Butcher's supervisor for the search. *Id.* ¶ 30.

At 3:40 p.m. Sergeant Bryce Rowser arrived, and Officer Butcher searched Mr. Harvey's vehicle. Rowser Daily Log Ex. K, ECF No. 104-12; Butcher Decl. Ex. F, ECF No 104-7 ¶ 37. Officer Butcher did not find any narcotics. Butcher Decl. Ex. F, ECF No. 104-7 ¶ 38. As his own tint meter was out of battery, Officer Butcher used Sergeant Rowser's tint meter to measure the tint on Mr. Harvey's car windows. Unsurprisingly, the window measured at 27.5% light transmittance. *Id.* ¶ 39. Officer Butcher issued a warning to Mr. Harvey and returned his license and registration. *Id.* ¶ 40. The second traffic stop lasted sixty-five minutes and concluded at 4:22 p.m. Butcher Daily Log Ex. H, ECF No. 104-9.

## LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if "a reasonable jury could find in favor of the nonmoving party

4

on the issue." *Macon v. United Parcel Serv*., Inc., 743 F.3d 708, 712 (10th Cir. 2014). "In making this determination," the court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Id.* at 712–13 (internal quotation omitted).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal citation omitted). "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff, who must clear two hurdles in order to defeat the defendant's motion." *Gutteridge v. Oklahoma,* 878 F.3d 1233, 1238 (10th Cir. 2018) (quoting *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009)). A plaintiff must show that "(1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct." *Gutierrez v. Cobos*, 841 F.3d 895, 900 (10th Cir. 2016) (quoting *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014)). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Fogarty v. Gallegos*, 523 F.3d 1147, 1161 (10th Cir. 2008) (internal citation omitted). "Precedent need not be 'directly on point' so long as it places the 'statutory or constitutional question beyond debate.'" *Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1303 (10th Cir. 2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)).

## ANALYSIS

To survive summary judgment, Mr. Harvey must demonstrate that a reasonable jury could find that Defendants violated his clearly established constitutional rights. The court first addresses the successive stops and then moves to Officer Butcher's use of a narcotics dog.

5

## I.      Successive Stops

The Fourth Amendment protects individuals from "unreasonable searches and seizures." U.S. CONST. amend. IV. Traffic stops are seizures akin to *Terry* stops under the Fourth Amendment and must be reasonable. *Delaware v. Prouse*, 440 U.S. 648, 653–54 (1979); *Whren v. United States*, 517 U.S. 806, 809–10 (1996). A traffic stop can be split into two parts, both of which must be reasonable: the initial act of stopping the vehicle and the conduct that occurs during the stop. *See United States v. Botero-Ospina*, 71 F.3d 783, 786 (10th Cir. 1995) (quoting *Terry v. Ohio*, 392 U.S. 1, 20 (1968)) ("To determine the reasonableness of an investigative detention, we make a dual inquiry, asking first 'whether the officer's action was justified at its inception,' and second 'whether it was reasonably related in scope to the circumstances which justified the interference in the first place.'").

The initial decision to stop a vehicle must be reasonable. *See United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir. 2009). To stop a vehicle, an officer must have either "(1) probable cause to believe a traffic violation has occurred, or (2) a reasonable articulable suspicion that a particular motorist has violated any of the traffic or equipment regulations of the jurisdiction." *Id.* (citation omitted).

Once a stop begins, it must last no longer than necessary to effectuate the original purpose for the stop. *See Rodriguez v. United States,* 575 U.S. 348, 348–49 (2015). The "tolerable duration [of a traffic stop] is determined by the seizure's 'mission,' which is to address the traffic violation that warranted the stop and attend to related safety concerns. Authority for the seizure ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.*; *see also Illinois v. Caballes*, 543 U.S. 405, 407 (2005) ("A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time

6

reasonably required to complete that mission."). There is no bright line rule governing the appropriate length of a stop. "In assessing whether a detention is too long in duration to be justified as an investigative stop, . . . [courts] examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *United States v. Sharpe*, 470 U.S. 675, 686 (1985).

"Successive investigatory stops are not per se prohibited, though a second stop is 'inherently more intrusive and coercive than the first.'" *United States v. Padilla-Esparza*, 798 F.3d 993, 1000 (10th Cir. 2015) (quoting *United States v. Ilazi,* 730 F.2d 1120, 1126 (8th Cir.1984)). When police conduct successive stops, not only must each stop be "limited in scope and duration," collectively, the stops must be reasonable. *Ilazi*, 730 F.2d at 1125 ("To end our inquiry here, however, would allow law enforcement officials to circumvent these requirements by subjecting an individual to successive stops, each sufficiently limited in scope and duration to satisfy the conditions of an investigatory seizure, but collectively so intrusive as to be tantamount to an arrest."). In other words, "where the same suspicion justifies successive investigations, and the officer conducting the subsequent investigation is aware of the prior investigation and the suspicion that supported it, the investigations' duration and scope must be both individually and collectively reasonable under the Fourth Amendment." *United States v. Foreste*, 780 F.3d 518, 525 (2d Cir. 2015).

The Tenth Circuit applied these principles in *Peters* and concluded that an officer, who has exhausted his reasonable suspicion justifying his initial vehicle stop cannot prolong the stop by asking a second officer to act as his proxy and stop a driver again after the first stop has concluded. *United States v. Peters*, 10 F.3d 1517 (10th Cir. 1993). In *Peters*, an officer initially stopped Peters for weaving. *Id.* at 1519. The officer noticed that the driver, in responding to the officer's questions,

7

seemed nervous. *Id.* The officer requested a drug sniff dog, but no dogs were available. *Id.* The officer released Peters because he lacked probable cause to detain him. *Id.* The officer then informed his superior that he "'didn't feel good' about the stop." *Id.* (internal citation omitted). The superior relayed the information to a DEA agent, who then stopped the vehicle because the driver had looked nervously at the agent and abruptly changed lanes. *Id.* at 1519–20.

The Tenth Circuit concluded that the second stop was an unreasonable search and seizure because the agent lacked reasonable suspicion.

> Of course, a second officer who is unaware of the fruitless search conducted earlier may initiate his own investigation based on the same "suspicious" behavior that was exhausted by the first officer's failed investigation. The officer who performed the original investigation, however, may not release the suspect as required by *Terry* and *Place*, wait until he has travelled down the road a few miles, and then make a second *Terry* stop based solely on the conduct that has already proved to be illusory. Similarly, the officer cannot circumvent *Terry* and *Place* by calling upon a different officer to make the second intrusion in his stead.

*Id.* at 1522. In other words, an officer who has exhausted reasonable suspicion for a traffic stop cannot prolong the stop by requesting a second officer act as his proxy and stop the individual again. *See Padilla-Esparza*, 798 F.3d at 1000 ("[A] second stop violates the Fourth Amendment when the prior stop had dissipated the reasonable suspicion offered to justify the second stop").

At 2:24 p.m, Officer Simpson stopped Mr. Harvey for reasonable suspicion of a window tint violation. Simpson Daily Log, Ex. D, ECF No. 104-5. An officer "may stop, inspect, and test a vehicle at any time upon reasonable cause to believe that . . . a vehicle is unsafe or not equipped as required by law." Utah Code § 53-8-209 (2015). It is clear to the court that Officer Simpson's initial decision to stop Mr. Harvey was constitutional.

Officer Simpson then measured the tint on the vehicle window and confirmed that it did not conform to Utah Code. Simpson Decl. Ex. B, ECF No. 104-3. An officer who confirms an equipment violation "shall give a written notice to the driver and shall send a copy to the division." Utah Code § 53-8-209(2)(a) (2015). "If a vehicle is, in the reasonable judgment of the peace officer, hazardous to operate, the peace office may require that the vehicle . . . not be operated under its own power [] or be driven to the nearest garage or other place of safety." Utah Code § 53-8-209(2)(b) (2015). In other words, once Officer Simpson confirmed the window tint violation, he could either give Mr. Harvey a warning, or determine that the window tint made the vehicle too dangerous to operate. Officer Simpson gave Mr. Harvey a written warning. Simpson Citation, Ex C, ECF No. 104-4. The confirmed window tint violation did not provide Officer Simpson with the authority to detain Mr. Harvey repeatedly or indefinitely.

Defendants argue that Officer Simpson did not exhaust his reasonable suspicion because Mr. Harvey's window was, in fact, tinted too darkly. Defs.' Suppl. Br. at 5, ECF No. 149 ("In the case before the court not only was Officer Simpson's reasonable suspicion not exhausted but it was confirmed."). However, the court is not persuaded by Defendants' interpretation of exhausting reasonable suspicion. Once Officer Simpson measured the tint on Mr. Harvey's windows, he confirmed that there was an equipment violation, and thus exhausted his reasonable suspicion that the window was tinted too darkly. *See Florida v. Royer*, 460 U.S. 491, 500 (1983) (emphasis added) ("[T]he investigative methods employed should be the least intrusive means reasonably available to *verify or dispel* the officer's suspicion in a short period of time."). If reasonable suspicion could not be dispelled so long as there was an ongoing confirmed equipment violation, officers could effectively detain people indefinitely so long as the equipment violation was not corrected in the interim and the officer took breaks in between each stop.

9

Defendants argue that prohibiting an officer from stopping a driver for the same offense that the officer just released the driver for would "discourage officers from exercising mercy and would prevent officers from acting in the event they recognize their prior mercy was a mistake and put the public in jeopardy." Defs.' Suppl. Br. at 8 n.2. Defendants cite *Nelson v. Kline*, 242 F.3d 33 (1st Cir. 2001) in support. In *Nelson*, the First Circuit granted qualified immunity to a police officer who released a suspected intoxicated driver and radioed a second officer to stop the driver for the same offense a short period later. *Id.* at 33–35.

However, this court declines to follow *Nelson*. Not only is *Nelson* a non-binding case where the court applied an erroneous summary judgment standard,[2] in addition to an equipment violation, *Nelson* involved an ongoing public safety violation—not an equipment violation that is at issue here. *Id.* A traffic stop can last no longer than necessary to "address the traffic violation that warranted the stop [] and attend to related safety concerns." *Rodriguez*, 575 U.S. at 349. "Authority for seizure ends when tasks tied to traffic infraction are—or reasonably should have been—completed." *Id.* Unlike in *Nelson*, there was no ongoing safety concern here. Indeed, having issued a written warning to Mr. Harvey, statutorily, Officer Simpson had exhausted the tint violation.

"[W]here the same suspicion justifies successive investigations, and the officer conducting the subsequent investigation is aware of the prior investigation and the suspicion that supported it, the investigations' duration and scope must be both individually and collectively reasonable under

---

[2] To avoid summary judgment on a motion filed by the defendant, the plaintiff bears the burden of demonstrating that "a reasonable jury could find facts supporting a violation of a [clearly established] constitutional right," *Gutierrez*, 841 F.3d at 900. And once those facts have been established, the court must draw reasonable inferences from those facts in the light of the non-moving party. But the court in *Nelson* instead asked whether the officer "may have concluded" or "could reasonably believe" that the violation was constitutional.

the Fourth Amendment." *Foreste*, 780 F.3d at 525. The reasonableness of successive stops is a fact intensive inquiry that requires courts to consider the time between stops, the crime suspected, and most critically, whether "independent reasonable suspicion justified the extension of each stop for further investigation." *Id.* at 526; *see also United States v. Green*, 897 F.3d 173, 184 (3d Cir. 2018) (concluding that the stops should be analyzed independently because unlike *Peters*, which involved a "four or five hour interval" where "the suspect had driven uninterrupted," here, "twenty-six hours elapsed between the two traffic stops" and a new offense for the type of crime suspected—drug trafficking—could occur in the interim); *Padilla-Esparza*, 798 F.3d at 1001 (distinguishing *Peters* because the officers "did not question Mr. Padilla-Esparza or search his vehicle" during the first stop and had simply "aborted the stop based on . . . [an] erroneous belief that they had pulled over the wrong truck.").

In *United States v. $167,000.00 in U.S. Currency*, the District of Nevada analyzed a situation that is similar to the one here. 112 F. Supp.3d 1108 (D. Nev. 2015). An officer stopped a driver for driving too slowly in the left lane and, after receiving unsatisfactory answers from the driver, suspected that the driver was ferrying money. *Id.* at 1111–13. However, the officer did not have probable cause to search the vehicle. *Id.* at 1113. The officer released the driver and contacted a deputy who was located further down the highway and accompanied by his narcotics dog. *Id.* The officer informed the deputy that "a canine unit 'might want to follow up on this information.'" *Id.* Less than an hour later, the deputy stopped the driver for briefly veering into the fog lane and having an obstructed back window. *Id.* at 1113–14. The deputy then conducted redundant records checks on the driver while walking his narcotics dog around the vehicle. *Id.* at 1121.

Although the government contended that each officer had independently stopped the vehicle, the district court concluded that "[t]he second detention was . . . a foregone conclusion

based on the information [relayed by the first officer], rather than an investigation based on [the second officer's] independent determination that reasonable suspicion existed to conduct the second stop based upon a suspected traffic violation." *Id.* at 1123. In other words, the "two traffic stops [were] inextricably connected," so that even though "under *Heien* [*Heien v. North Carolina*, 574 U.S. 54 (2014)] both stops were supported by reasonable suspicion based on the officers' belief that they observed traffic violations," the driver's "total detention was unreasonably prolonged." *Id.* at 1117–18.

Here, after releasing Mr. Harvey, Officer Simpson relayed that he had just stopped a red Volkswagen with Arizona plates and confirmed that the vehicle had windows that were tinted too darkly to Officer Butcher. Officer Simpson messaged Officer Butcher: "got a car for you to stop. . . . I just let him go. . . . [W]indow tint measured 27%." Redacted IM Transcript Ex. E, ECF No. 104-6. Officer Butcher claims that he developed reasonable suspicion to stop Mr. Harvey because he had independently observed the vehicle's window tint. Butcher Decl. Ex. F, ECF No 104-7 ¶¶ 12–15. However, a reasonable fact finder could conclude that the messages between Officer Simpson and Officer Butcher undercut Officer Butcher's claim of independent suspicion, and that Officer Butcher was acting as Officer Simpson's proxy and unconstitutionally prolonging the duration of Officer Simpson's stop. *See* Redacted IM Transcript Ex. E, ECF No. 104-6 (responding "ok [I']ll hurry and head that way."). At the summary judgment stage, the facts must be interpreted in the light most favorable to the non-moving party. Accordingly, the court finds that a reasonable jury could conclude that Defendants violated Mr. Harvey's Fourth Amendment rights by unreasonably prolonging the duration of the stop.

Defendants argue that Officer Simpson's messages to Officer Butcher should be interpreted as a police flyer. Defs.' Suppl. Br. at 4. A police flyer or bulletin is information broadcast on a

police channel that prompts an investigation. *State v. Roybal*, 2010 UT 34, ¶14, 232 P.3d 1016 (Utah 2010). "[I]f a flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on that flyer or bulletin justifies a stop . . . to detain the person briefly while attempting to obtain further information." *United States v. Hensley*, 469 U.S. 221, 232 (1985).

As a preliminary matter, in light of Defendants' prior attempts to characterize Officer's Butcher's stop as "objectively justifiable based on his observation of Mr. Harvey's equipment violation," the court is not persuaded that the flyer analysis is appropriate for this situation. Defs.' Mot. Summ. J., ECF No. 104; *see United States v. Whitley*, 680 F.3d 1227, 1235 (10th Cir. 2012) (explaining that in analyzing the flyer or "collective knowledge doctrine," the focus is on "whether the officer requesting the stop had reasonable suspicion" and not on "whether the officer making the stop independently had reasonable suspicion").

However, even if the messages were viewed as a flyer, a reasonable jury could find that Defendants violated Mr. Harvey's Fourth Amendment rights because Officer Simpson issued the flyer without reasonable suspicion, and a reasonable officer could not have relied on the flyer to stop Mr. Harvey. "If the flyer has been issued in the absence of a reasonable suspicion, then a stop in the objective reliance upon it violates the Fourth Amendment." *Hensley*, 469 U.S. at 233 "It is the objective reading of the flyer or bulletin that determines whether other police officers can defensibly act in reliance on it." *Id.* at 232–33.

Having confirmed Mr. Harvey's window tint violation, and issued only a warning, Officer Simpson exhausted his reasonable suspicion regarding this offense. Officer Simpson therefore lacked reasonable suspicion to issue a bulletin to Officer Butcher. Officer Simpson informed Officer Butcher that (1) Mr. Harvey's vehicle window violated Utah Code, (2) Mr. Harvey had

dodged his questions, and (3) Officer Simpson had a hunch that a drug dog would set off an alert. Redacted IM Transcript Ex. E, ECF No. 104-6. By relaying the transmittance level on Mr. Harvey's vehicle to Officer Simpson, Officer Simpson informed Officer Butcher that Officer Simpson had exhausted the tint violation. Dodging questions alone does not constitute reasonable suspicion of a crime. *See United States v. Frazier*, 30 F.4th 1165, 1175 (10th Cir. 2022) ("[R]efusal to answer law enforcement questions cannot form the basis of reasonable suspicion . . . ."). Nor does an officer's hunch. *United States v. Williams,* 843 F. App'x 111, 115–16 (10th Cir. 2021) (quoting *United States v. Moore*, 795 F.3d 1224, 1229 (10th Cir. 2015)) ("Reasonable suspicion requires 'something more than an inchoate and unparticularized suspicion or hunch.'"). Thus, a reasonable fact finder could conclude that Officer Simpson issued the flyer without reasonable suspicion, and an objective reading of Officer Simpson's messages did not create the necessary level of reasonable suspicion that would have permitted Officer Butcher to stop Mr. Harvey.

In summary, the court is persuaded that a reasonable jury could conclude that Defendants violated Mr. Harvey's Fourth Amendment rights. Moreover, the law proscribing Officer Simpson from extending his stop by proxy was clearly established. The Fourth Amendment protects individuals from unreasonable searches and seizures. U.S. CONST. amend. IV. In the context of traffic stops, this means that an officer must have reasonable suspicion to initiate a traffic stop and that absent additional reasonable suspicion, the stop may not last longer than necessary to carry out the initial purpose of the stop. *Rodriguez*, 575 U.S. at 355. An officer "may not release the suspect . . . wait until he has travelled down the road a few miles, and then make a second *Terry* stop based solely on the conduct that has already proved to be illusory." *Peters*, 10 F.3d at 1522. Furthermore, "the officer cannot circumvent *Terry* and *Place* by calling upon a different officer to make the second intrusion in his stead." *Id.* Thus, when the successive stops are considered in

context, the court is persuaded that Mr. Harvey has met the burden required to overcome Defendants' qualified immunity defense at summary judgment.

## II.    Narcotics Dog Sniff

Having addressed the successive stop, the court moves to the constitutionality of Officer Butcher's conduct during the second stop, specifically, the narcotics dog sniff. In *Rodriguez*, an officer initially stopped Rodriguez for swerving into the shoulder. *Rodriguez*, 575 U.S. at 351. After conducting all relevant traffic stop activities, such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance," the officer issued a written citation to Rodriguez. *Id.* at 355 (citations omitted). "Nevertheless, [the officer] did not consider Rodriguez 'free to leave.'" *Id.* at 352 (internal citation omitted). The officer detained Rodriguez until a second officer arrived, and then proceeded to walk his narcotics dog around Rodriguez's vehicle. *Id.*

The Supreme Court concluded that a narcotics dog sniff is not a routine traffic stop activity. *Id.* at 349 ("Lacking the same close connection to roadway safety as the ordinary inquires, a dog sniff is not fairly characterized as part of the officer's traffic mission."). Because "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures," the constitutionality of the dog sniff depends on whether there was reasonable suspicion to detain Rodriguez after the officer concluded the traffic stop. *Id.* at 350. An officer who conducts unnecessary background checks in order to "make time for a canine sniff" unreasonably prolongs an investigation. *$167,000*, 112 F.Supp.3d at 1120.

Defendants contend that the narcotics dog sniff conducted by Officer Butcher is constitutional under *Rodriguez* because Officer Butcher was simultaneously running a records check. And the check was not redundant, unlike the check in *$167,000*, because Officer Butcher

did not know that Officer Simpson had checked Mr. Harvey's records or the results of the check. *See* Butcher Decl. Ex. F, ECF No. 104-7 ¶¶ 6–7. Therefore, Defendants assert that the drug dog sniff did not prolong the second traffic stop.

Defendants' analysis would be correct if Officer Butcher had *independently* developed reasonable suspicion. *See Peters*, 10 F.3d at 1522 ("Of course, a second officer who is unaware of the fruitless search conducted earlier may initiate his own investigation based on the same 'suspicious' behavior that was exhausted by the first officer's failed investigation."). However, as previously discussed, whether Officer Butcher independently stopped Mr. Harvey is a materially disputed fact. From the messages that Officer Simpson sent to Officer Butcher, a reasonable fact finder could infer that Officer Butcher was acting as Officer Simpson's proxy. If Officer Butcher's entire stop was an unreasonable continuation of Officer Simpson's first stop, then Officer Butcher would need to establish additional reasonable suspicion to initiate the narcotics dog sniff. But Defendants have not provided any evidence establishing that Officer Butcher had additional reasonable suspicion to conduct a drug dog sniff. Thus, the court concludes that viewed in the light most favorable to Mr. Harvey, a reasonable fact finder could infer that Officer Butcher's drug dog sniff constituted an additional Fourth Amendment violation that was clearly established under *Rodriguez*.

## CONCLUSION AND ORDER

For the foregoing reasons, the court hereby DENIES Defendants' Motion for Summary Judgment.

DATED August 2, 2023.

BY THE COURT

16

Jill N. Parrish
United States District Court Judge

17